## DODGE BROS. v. EAST.

(District Court, E. D. New York. April 20, 1925.)

1. **Trade-marks and trades-names and unfair competition ⬦⟿95(1)—Motion, on affidavits merely, for temporary injunction in suit to restrain alleged unfair competition, held properly denied.**

Motion for temporary injunction, based merely on affidavits, in suit for alleged unfair competition, *held* properly denied.

2. **Trade-marks and trade-names and unfair competition ⬦⟿91—Automobile manufacturer held proper party plaintiff to restrain unfair competition through use of advertising by dealer in secondhand automobiles.**

In suit by automobile manufacturer to restrain unfair competition by dealer in secondhand automobiles, by similarity in advertising devices leading public to believe that defendant was plaintiff's dealer, *held*, that manufacturer, whose rights had been affected, rather than its dealer, was proper party plaintiff.

**3. Trade-marks and trade-names and unfair competition ⬚75—Court of equity concerned only with unfair appropriation having for its object creating misapprehension in course of legitimate trade.**

Court of equity is not concerned with ordinary misapprehension of general public in course of legitimate trade, but only with an unfair appropriation when clearly shown to have for its object creating of such deception.

**4. Trade-marks and trade-names and unfair competition ⬚71—Automobile manufacturer held entitled to restrain use of its peculiar form of advertising by dealer in secondhand automobiles.**

Automobile manufacturer *held* entitled to restrain intentional appropriation of a peculiar advertisement device by dealer in secondhand automobiles, likely to create belief in public mind that defendant was plaintiff's authorized dealer.

**5. Trade-marks and trade-names and unfair competition ⬚75—Proof of deception required, where plaintiff claims public has been deceived by advertising of defendant.**

When plaintiff claims public has been deceived, or is reasonably likely to be deceived, by advertising of defendant, such deception must rest on proof that defendant has appropriated something peculiarly belonging to plaintiff, and associated in public's mind, by reason of expenditure of money, and wide, continuous, and uniform advertising, with plaintiff's business.

In Equity. Suit by Dodge Bros. against William V. East to restrain unfair competition. Decree for plaintiff.

Putney, Twombly & Putney, of New York City (Louis H. Hall and Lemuel Skidmore, both of New York City, of counsel), for plaintiff.

Robert Jablin, of New York City, (Jacob Broches Aronoff, of New York City, of counsel), for defendant.

INCH, District Judge. This is a suit in equity for alleged unfair competition. Plaintiff, a manufacturer of automobiles, has sued the defendant, and asks that he be restrained from continuing to employ certain signs in connection with his business premises; from using signs employing white letters on a blue background, in conjunction with the use of the name Dodge; from using the words "Dodge Dealer"; and from using any words or combination of words, colors, or style of lettering which would tend to deceive the public into believing that the defendant is operating a service station or a salesroom under authority from, or with the approval of, the plaintiff. The defendant has duly answered, denying the existence of any facts which would justify the granting of the relief prayed for by plaintiff, and setting up the defense of laches.

[1] The plaintiff made a motion for a temporary injunction, on affidavits, which, in my opinion, was properly denied by Judge Campbell. A decision otherwise would have given plaintiff on mere affidavits all the relief which a trial court could give after the examination and cross-examination of witnesses. Where deception, willful or otherwise, is in issue, the granting of what might be drastic relief usually should wait for a trial.

The question presented here is not free from difficulty. On one hand, the plaintiff's business should be fairly and properly protected. On the other, defendant's business should not be unfairly and unreasonably obstructed or injured. There has been no attempt made to show actual fraud on the part of the defendant, such as the selling of cars under the misrepresentation that they were Dodge cars. The deception claimed, if any, is of a subtle nature. It remains to be seen whether any such deception at all, that a court can recognize, exists.

A brief statement of the business of both parties may be helpful. The plaintiff, Dodge Bros., is a Michigan corporation, doing the business of making and selling automobiles. It does not sell secondhand cars, nor does it, itself, maintain "service stations" or "repair stations."

Since 1914, plaintiff's cars have been sold under the name of "Dodge Bros. Motor Cars." This correct name has been shortened by the public to "Dodge Bros." or "Dodge Cars." According to the testimony, since 1914, over a million and a quarter of these automobiles have been sold by plaintiff, at an average price of $1,000 a car. During this same period close to $12,000,000 has been spent by plaintiff in advertising its motor cars.

The character of this advertising was described by a witness, Mr. Lyons, in charge of the service department of the factory of plaintiff, which is a division of the sales department, of which the advertising department is also a part. This witness stated that the plaintiff had always used, in its billboard and its other advertising, a uniform style or design. This was the name "Dodge Bros.," in block type, in white letters, on a very deep blue background, the letter "E," in the word "Dodge," having its middle stroke carried out slightly beyond the upper and lower stroke. "We have always used it in that work, poster, board, billboards, and painted boards, and the style or the design of the advertising matter has been uniform

all the way through. The two outstanding characteristics, or rather three, are a blue background, very deep blue, and white letters, of what is called the block type, and this advertising has been the same in form from the beginning."

This combination appeared on the various photographs offered by plaintiff. It is this distinct and unique form of advertisement of the name "Dodge" that has been spread far and wide, at great expense, by plaintiff. It is claimed, and is reasonable to suppose, it has become identified, in the general public's mind, with plaintiff's product and business. Thus the public, using "Dodge" cars, to the extent of over a million, can be reasonably assumed to have a good impression of the reliability and substantial character of plaintiff, and would reasonably have the same good opinion as to any subsidiary activity connected with its business into which plaintiff has gone, or into which the general public might reasonably be led to believe it had gone, although the contrary was the fact.

In other words, a situation has been developed by this advertising of plaintiff, all of which costs a great deal of money, where the following statement may be quoted, from the case of Hilson Co. v. Foster (C. C.) 80 F. 896, at page 897: "Money invested in advertising is as much a part of the business as if invested in buildings, or machinery, and a rival in business has no more right to use the one than the other."

But, while we are thus quoting from the above case, it may be well to quote further, where Judge Coxe says: "The action is based upon deception, unfairness, and fraud, and when these are established the court should not hesitate to act. Fraud should be clearly proved; it should not be inferred from remote and trivial similarities. Judicial paternalism should be avoided; there should be no officious meddling by the court with the petty details of trade; but, on the other hand, its process should be promptly used to prevent an honest business from being destroyed or invaded by dishonest means." Hilson Co. v. Foster, supra.

Let us now turn to the defendant and his business. The defendant since 1915 has been, and still is, a duly licensed dealer in used cars. Since 1919, he has specialized in used Dodge cars. In other words, he has devoted himself, exclusively, to building up a good will with numerous customers, who, having bought a new Dodge car, and desirous of selling it, have learned to come to him, or send friends similarly situated, and receive the cash value of their used car. In addition, and as a necessary adjunct, to this secondhand car business, defendant maintains a service station. His main place of business is at 1270 Bedford avenue, Brooklyn, and his service station is at 814 Sterling Place, Brooklyn.

The Bedford avenue place holds 11 cars and is a showroom. The Sterling Place service station is built of fireproof brick, and holds 22 cars.

This business conducted by defendant is quite common. It is useful, legitimate, and, so far as I can see, from this record, has been conducted by him without even a suspicion of any dealing that might be considered a reflection on the integrity of his business. It is defendant's sole business, and, though he may call himself manager, such in fact he is, as well as being the sole proprietor. While his business is modest in capital invested, compared with plaintiff, yet the court should be and is equally as concerned with his rights as with those of plaintiff. On the above general statement of the business carried on by the parties we have to look into their respective rights.

In the first place, the plaintiff corporation does not sell or buy secondhand cars. Its sole business is the selling of new cars. This is far from saying, having in mind the valuable good will, which is an essential part of the business of plaintiff, as well as that of any other concern, that plaintiff's business interests entirely cease upon the sale by it of such new Dodge car, and that from then on it is not in any way substantially concerned with whether or not such purchaser becomes a satisfied buyer. The contrary is true. Every satisfied buyer is a potential buyer of a new car of the same make. In fact, the saturation point of first buyers is nearer reached than the point where another car is bought, perhaps larger and better, and of the same make, because the service rendered by the old car was satisfactory and its maker found reliable.

Again, plaintiff certainly cannot complain that its car is known as a Dodge car as long as it lasts. That is the name given to it at birth, and every one has a right to refer to it, by advertisement or otherwise, by this its true name. Also no court should prevent a person selling a Dodge car or buying one, and the mere fact that some one makes a specialty of doing this does not seem to me to change the situation.

There is no proof offered or claim made here that defendant has ever sold, as a Dodge car, one of some other make. Indeed,

plaintiff's counsel in his brief states, at page 46: "The plaintiff asks no restraint whatever on the right of the defendant to deal in used Dodge Bros. cars. It claims no right whatever to interfere or limit him in advertising that he deals in used Dodge Bros. cars. It has no interest whatever as to the amount of business done by him in used Dodge Bros. cars, or other cars. It fully and freely concedes, and has always conceded, that any one may lawfully and properly deal in used cars of any description, including Dodge Bros. used cars. The sole claim that it makes in respect thereto is that a person not conducting his business in co-operation with and under the sanction of the plaintiff shall not falsely represent to the public, either directly or by implication, that he is acting under the plaintiff's sanction, and shall not display the plaintiff's sign mark and 'commercial signature' in connection with such business."

In other words, the issue narrows down to the request by the plaintiff that this court restrain the defendant from intentionally or unintentionally deceiving the general public into reasonably believing that the plaintiff corporation is connected in some way with defendant's business; the reason being that the general public, dealing with defendant, might not be satisfied with the treatment it received from defendant, and thus, without ability to protect itself, the plaintiff's business good will unfairly be harmed, or, if satisfactory treatment is given, the defendant is thus unfairly enjoying an increase in his own business, paid for directly by plaintiff, yet without any return from defendant to plaintiff on its investment. Therefore, if the advertising used by defendant is legitimate, no wrong has been done plaintiff. If this advertising is a deception, a court of equity should interfere. To allow such a deception to continue would be unfair competition.

Much has been said about this question of competition. This action is one for unfair competition. As stated, plaintiff deals in new automobiles. Defendant deals in secondhand automobiles. Plaintiff does not sell any cars, in Brooklyn, to individual purchasers. A corporation, Bishop, McCormick & Bishop, located in Brooklyn, is the sole buyer of all the Dodge cars sold by plaintiff in this territory.

Plaintiff, therefore, has but one customer in this district, and this customer is said to be selected by plaintiff most carefully; the character, capability, and capital of every such buyer or dealer is carefully and thoroughly investigated. A system of supervision over such buyer exists, and the relationship between the two is one of co-operation. The advertising of this buyer is supervised and approved by plaintiff, and, while the plaintiff maintains no service stations, this buyer is required to maintain one or more, and keep the accessories and parts complete and service efficient. Plaintiff carries this arrangement out throughout the country. It is this buyer alone that deals in secondhand Dodge cars. It is entirely separate from plaintiff.

Thus, while there is no actual competition as to sale of new cars between plaintiff and defendant or direct competition between them as to the sale of used cars or in maintenance of service stations, yet there is this connection between plaintiff and its sole buyer, which, by reason of plaintiff's good will and co-operation, supervision, and arrangement, between plaintiff and its buyer, creates a competition in its broader sense, even if there is no actual competition in the narrow definition of the word.

However, courts of equity have not felt themselves bound to such narrow definitions where deception plainly is shown. "Equity looks, not at the character of the business in which the parties before the court are engaged, but at the honesty or dishonesty of their acts." (Page 2.) * * * "The existence of this right of action depends upon the question of fact whether what is done in a special case tends to pass off the goods of one man as being those of another or tends to deprive any one of his rights." (Page 3.) * * * Nims on Unfair Competition.

[2] On the facts here and the nature of the deception claimed, it would seem to me that the plaintiff, whose rights have been affected, rather than its dealer, is the proper plaintiff. The power of a court of equity is apparently no longer confined to merely restraining another from selling falsely represented goods, but has been extended to prevent a deception of the general public into believing that good will, or investment, of another, are enjoyed by or is a part of another's business, so that the ordinary public would be led to believe that, in dealing with such person, it was also dealing in some way with the other.

[3] The court is not concerned with the ordinary misapprehension in the course of legitimate trade, but is concerned with an unfair appropriation, when clearly shown to have for its object the creating of such deception. For example of this doctrine see the following cases:

Florence Manufacturing Co. v. Dowd & Co., 178 F. 73, 101 C. C. A. 565. This was a suit for infringement of a trade-mark and for alleged unfair competition. Judge Coxe, at page 75 (101 C. C. A. 567), says: "The law is not made for the protection of experts, but for the public—that vast multitude which includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions."

L. E. Waterman Co. v. Modern Pen Co. (D. C.) 193 F. 242, where Judge Hand, at page 246, says: "Motive has a just share in determining whether a man is in fact pursuing his genuine interests, and whether he is therefore acting on his 'rights'; but, when each party is obviously trying to increase his property, his estate, his 'universitas,' the mutual limitations of activity between them do not depend upon the motive, so far as I know, but upon the means they use to effect their intentions and the results that ensue."

Here the original signs of defendant and the rather reluctant and gradual change are quite persuasive that there was something of value to defendant, not in the name, but in the peculiar form of advertisement of the name by plaintiff.

Akron Overland Tire Co. v. Willys Overland Co. (C. C. A.) 273 F. 674, where Judge Buffington, at page 675, says: "We note the earnest contention of defendant's counsel that the case was one where there could be no unfair competition on the part of the defendant, because the defendant was not in business competition, where the parties were not in competition in the same kind of business. * * *" And at page 676: "It will thus be seen that the business of both companies, because they both concern some phase of automobile activity, were interrelated."

Wilcox & White Co. v. Leiser (D. C.) 276 F. 445, where Judge Manton, at page 446, says: "And the court should interfere where the defendant seeks to get the benefit of plaintiff's reputation and advertising and forestall the extension of his trade."

Beechnut Packing Co. v. Lorillard Co. (D. C.) 299 F. 834. While this was a suit relating to a trade-mark, yet the reasoning is applicable to this case; Judge Lynch saying, at page 846, after stating the rule as to trade-marks: "If any cases are to be found which seem to depart from this rule, examination will show either that they involved facts showing actual fraud or bad faith, or the equivalent thereof."

The deception in this case may be again stated to be, not in the use of the name, but in the intentional appropriation of the peculiar advertisement of that name by plaintiff.

Finally, Vogue Co. v. Thompson Hudson Co. (C. C. A.) 300 F. 509, hereafter also quoted from by me in connection with the right merely to use the name. Here, at page 512, Judge Denison states: "This rule [unfair competition] is usually invoked when there is an actual market competition between the analogous products of the plaintiff and the defendants, and so it has been natural enough to speak of it as the doctrine of unfair competition; but there is no fetish in the word 'competition.' The invocation of equity rests more vitally upon the unfairness."

Both plaintiff and defendant have cited many cases, about which there can be no question, where one man sells as his own goods those manufactured and better advertised by another, and cases where there existed in direct competition, in its narrower sense, a willful fraud. None of these is considered by me applicable, because there are no such facts in this case. This case must be decided on the theory of the cases above expressly mentioned.

Nor is this a "trade-mark" case. Therefore it would not seem to make any difference whether the two businesses carried on are in fact entirely similar or dissimilar, provided the public has been deceived, or is plainly likely to be deceived, by an appropriation and use unnecessarily, by one concern, of that which plainly belongs to and is of plain value in the business carried on by another, and which may injure its entrance directly into that field.

Such deception may arise where there has been an intentional appropriation and use by one concern of another's "commercial signature," or distinctive and sufficiently extensively advertised business sign, apart, of course, from the mere correct name of an article manufactured. It seems to me, therefore, that the real difficulty presented by this case arises from the failure to distinguish between a name of an article and a distinctive method of advertising same, adopted by its maker. Whether or not it is a poor business policy to curtail in any way the spread of a business name by eager and legitimate persons is not for me to say.

Suffice it to state that plaintiff's product is known as a "Dodge" car. By that name it alone can be fairly and properly described. If plaintiff had no definite and distinc-

tive method of advertising its name, there would be no deception in its use, for, as said in the case of Vogue Co. v. Thompson Hudson Co., supra, at page 511, while "there is likely to be a considerable element of mistake on the part of purchasers who suppose that the use of the word indicates some connection with the magazine, it is a mistake for which plaintiff must carry the responsibility, because it chose as the name of its magazine a word which all are at liberty to use."

Thus it seems to me that an individual or a business concern could and must use the name "Dodge" in describing what is in truth a "Dodge" car. Where, however, it is not this name of its product, but an appropriation of a sign, adopted at great expense and over a long period of time, by plaintiff, for advertising its product, then the act of deception is in this intentional appropriation of this distinctive sign, not in the use of the name.

[4] Bearing, therefore, this distinction in mind, it seems to me that what plaintiff is entitled to have stopped is the intentional use by defendant of plaintiff's distinctive form of advertising of the name "Dodge," to wit, in white block letters, without and particularly with the peculiar "E," and whether or not used in connection with the word "Brothers," or "Motor Car," or "Car." No reason suggests itself to me why this peculiar form of combination of advertisement of this name must or should be used by defendant, in connection with his buying, selling, or repairing of automobiles, even of the Dodge type. His business can be advertised and conducted just as well without it.

This being so, it seems to me that, where the proof shows that not the name, but the peculiar form of advertising of the name, belonging to plaintiff, is used, it should be stopped. Beyond this I do not think the court should go. There is no exclusive right in the colors, or in the name, or in the business. There is, it seems to me, in this case, an exclusive right earned to the particular and distinct advertisement of the name "Dodge" in connection with "car," and its nonuse puts no undue burden that I can see upon defendant.

Defendant uses the following signs to advertise his business; the colors used are blue and white, the background being of the former and the letters being of the latter color:

At his main place of business, 1270 Bedford avenue, Brooklyn, the sign is (Plaintiff's Exhibit 4):

WM. V. EAST
USED DODGE CARS
EXCLUSIVELY

At his service station, 814 Sterling place, Brooklyn, along the front thereof appears:

814—WM. V. EAST
SERVICE STATION—814

While hanging out at right angles to the sidewalk is a small sign (Plaintiff's Exhibit 7):

REPAIRS
for
DODGE
CARS

These signs are the principal object of the complaint of plaintiff. On his letterheads he uses the words:

WILLIAM V. EAST
DODGE BROTHERS USED CARS
EXCLUSIVELY

While on his envelopes he uses the following:

WM. V. EAST
DODGE DEALER
1270 Bedford Ave.,
Brooklyn, N. Y.

Applying the above reasoning to defendant's signs and advertisements, it seems to me that his sign at the service station should not have the name "Dodge" in these white block letters, with or without the peculiar "E," on a blue background. He can, however, have the name "Dodge" in some other form of letters. With this criticism I see nothing to forbid in his present service station advertisement.

As to defendant's sign at his main place of business, as at present used, the same and sole criticism as to the word "Dodge" exists. Of course, it goes without saying, that the form previously used, and now abandoned by defendant, of the word "Dodge Bros. Department," was wrong, and conceded to be so by his counsel. It has been discontinued.

It also seems to me that the words "Dodge Dealer," apparently used by defendant on his business envelopes, is, as it stands, misleading and wrong, because plaintiff has no such dealer, and defendant knows it. This should be changed, to avoid any misconception in the public's mind. The words "Dodge Service," and "Dodge Service Station," had been abandoned by defendant, and were for like reason wrong.

[5] Summing up the whole matter, it seems to me that, when plaintiff claims the public has been deceived, or is reasonably

likely to be deceived, by the advertising of defendant, such deception must rest on proof that defendant has appropriated something peculiarly belonging to plaintiff, and associated in the public's mind, by reason of expenditure of money and wide, continuous, and uniform advertising, with plaintiff's business.

Returning to the peculiar form of advertising of plaintiff as testified to, it appears that it is the name "Dodge" in white block letters, with a peculiar "E," on a blue background. It would be, perhaps, asking too much to compel the public to distinguish between the association of the words "Brothers," "Motor Cars," or "Cars," with this word "Dodge," or with merely the peculiar "E."

It would seem that the use of the word "Dodge" in white block letters on a blue background, in connection with an automobile business, whether in the sale or repair of same, would probably have the same effect on an average person's mind. As I have already said, beyond this I do not think a court should go, in striving to protect one business concern against possible unfair competition by another legitimate business. I find no laches.

Accordingly plaintiff may have a decree, to be settled on notice, in accordance with this opinion.