**VOLKSWAGENWERK, G.m.b.H. and Volkswagen of America, Inc.,**
Plaintiffs,

v.

**Joseph R. FRANK, Defendant.**

**Civ. A. No. 6782.**

United States District Court

D. Colorado.

Nov. 6, 1961.

holding out to the public by signs, advertising, or other printed matter which also contains the word "Volkswagen," using the word "Volkswagen" in connection with his business rather than in a purely denotative use in reference to Volkswagen products, using the term "VW" in connection with his business, and exhibiting certain registered symbols.

The motion further alleges that the defendant has in the past conducted his business along the lines indicated by the requests for injunctive relief and that he will continue to do so unless he is restrained by Court order.

It is further alleged that there is irreparable injury to plaintiffs' good will and that a preliminary injunction is necessary in order to prevent irreparable injury. It is further alleged that such injunctive relief will not unduly inconvenience the defendant.

The delay in seeking injunctive relief is explained in terms of belief by plaintiffs that the cause would be tried at an earlier date than February 5, 1962, on which date it is now set for trial on the merits; and secondly, because of the fact that negotiations with defendant have gone on from time to time. Partial compliance by the defendant seemed to make it unnecessary to have a hearing. Moreover, the plaintiffs point out that at the moment the defendant has ceased and desisted from the more obnoxious practices, and hence the entry of an injunctive order at this time would not prove burdensome to him.

Lewis, Grant & Davis, Robert H. Harry, and Hugh J. McClearn, Denver, Colo., for plaintiffs.

Dayton Denious, Denver, Colo., for defendant.

DOYLE, District Judge.

On May 3, 1960, plaintiffs filed their complaint against the defendant alleging misappropriation of their trade-marks and good will and seeking injunctive relief and damages.

Thereafter, the cause proceeded through the usual motion, discovery, and pre-trial stages, and finally, on October 5, 1961, plaintiffs filed their Motion for Preliminary Injunction. The present hearing was based upon this motion. They seek to enjoin the defendant from

The evidence establishes that defendant carries on a retail automobile business at 135 South Broadway, Denver, Colorado. At the moment, he uses the trade name "Economy Motors, Ltd.," and in the past has used such names as "Foreign Car Center," "Volkswagen Car Center, Limited," "Volkswagen Sales and Service, Inc.," "Volkswagen German Motor Company," "Volkswagen Foreign Car Center." The present trade name has been used since July of this year at which time he was issued a new car license authorizing him under Colorado statutes to

deal in new Renault automobiles. Theretofore, his license was limited to the sale of used cars.

Defendant has sold a large volume of Volkswagens, new and used. The testimony indicates that he has, during the three-year period, purchased practically one thousand cars from one source. This supply has had its origin for the most part in imports which were received at Houston, Texas, and wholesaled to the defendant. These have been both new and used automobiles.

The plaintiff, Volkswagenwerk G.m.b. H., is a German corporation, the manufacturer of the Volkswagen automobile. The plaintiff, Volkswagen of America, Inc., is the exclusive American distributor for the German corporation. In addition to this latter company there are regional distributors, and the company which supplies this region is called Intercontinental Motors, and is headquartered at San Antonio, Texas. Dealers are licensed by the distributor, but the plaintiffs have a power of veto as to any dealer and their various contracts also contain termination clauses which were, no doubt, designed to provide them with a measure of authority over the dealers, looking to protection of their good will.

The plaintiff, Volkswagenwerk G.m.b. H., holds three trade-marks: the name "Volkswagen," (No. 617,131); the letters "V" and "W" in superposed relationship, framed by and in contact with a circle into which the letters merge, (No. 631,-649), and the letters "VW", (No. 653,-695).

The evidence as to the defendant's unlawful practices consists of photographs, documents, newspaper ads and some testimony.

The photographs were taken over a long period of time and for the most part depict the defendant's place of business at 135 South Broadway, together with his used car lot which is almost directly across the street from the main place of business.

It is impossible to describe in detail the various and sundry signs which have been employed at different times. They have, however, boldly displayed the name "Volkswagen" and have made free use of the symbol "VW" encircled, and the symbol "VW", and the caption "VW" in the name "Volkswagen." Sometimes the sign has been so large that it dominated most of the wall on either side of the building and in addition other signs have been displayed on the roof and one vertical Volkswagen sign with the large "V" and large "W" displayed above the sign which was on the roof. In addition, numerous Volkswagen automobiles and trucks are displayed on the outside of the building. There have been various modifications of the system of exposure of signs and symbols based on negotiations between the parties, until at the present time defendant is reduced to signs which say, "Volkswagen—Renault" on either side of his building, plus "Largest Dealer of the West," and "We Beat All Deals."

The newspaper advertisements are for the most part classified ads which take various forms but which to a great extent have been designed to create the impression that defendant is a Volkswagen dealer. Since he received his license to sell new Renaults he has emphasized and is advertising the fact that he is authorized to deal in new cars and has also shown the name "Volkswagen" in a manner which connects his offer to sell this brand of vehicle as a new car dealer; thus, the tendency of these representations that he is a "new car authorized dealer" or "authorized dealer" has presented to the public the representation that he is an authorized Volkswagen new car dealer. This advertising, while not always as flagrant as indicated above, has been systematic and continuous.

Other evidence offered by plaintiffs has consisted of testimony of purchasers of Volkswagens from the defendant. In such instances the purchaser had discussions with the defendant in the course of which he gave oral assurance of his authority to deal in new Volkswagens. In each instance related there were unsatisfactory circumstances. The defendant neglected to give credit for turned-in au-

tomobile or for down payment, and in at least two instances the testimony showed that the vehicle had had considerable use as evidenced by tire wear and other signs. The dissatisfaction of these purchasers was very obvious and plaintiffs, of course, offered this testimony to show injury to their good will.

Although there was little evidence directly dealing with the point, there can be little dispute but that plaintiffs have spent large sums of money in an effort to build an attitude of confidence in the minds of the public and these efforts have met with considerable success. Whether this is due to the quality of the vehicle or the quality of the service, it is impossible to say, but it is undeniable that the public does associate the name and the symbols in question with a product of high quality. The tremendous success of the product market-wise attests to its acceptance.

Has the defendant invaded this good will? It seems clear from the evidence that defendant has made a real effort to cash in on the good will of plaintiffs. His bold display of signs and symbols could have had but one purpose; namely, to create in the minds of the public the impression that he is a part of the Volkswagen organization. If defendant were merely seeking to advertise the fact that he has Volkswagens for sale he could have selected other methods to accomplish his purpose. By using bold and blatant signs and symbols and by subtle advertising techniques he has gone beyond mere announcement of his readiness to sell these vehicles—he has set himself up as the headquarters for Volkswagen automobiles in the area and by so doing has appropriated a valuable intangible property right of the plaintiffs, their good will.

There are many cases which recognize the value of the property interest here in question and which also recognize that conduct such as that of defendant, including misleading advertising and statements, constitutes an invasion of this right to hold and enjoy good will. See

Dodge Bros. v. East, (D.C.E.D. New York, 1925) 8 F.2d 872; Ford Motor Co. v. Helms, (D.C.E.D. New York, 1938) 25 F.Supp. 698; Ford Motor Co. v. Benjamin E. Boone, Inc., (9 Cir., 1917) 244 Fed. 335, and Lincoln Motor Co. v. Lincoln Automobile Co., (D.C.N.D.Ill.1930) 44 F.2d 812.

To be sure, the present case differs somewhat from the cases cited, but these decisions do not establish invariable patterns which govern each situation which arises. The issue in each case is whether the defendant has, regardless of the means used, appropriated the plaintiff's good will. The language used in the Dodge case, supra, is peculiarly applicable here. There it was said [8 F.2d 876]:

> "The deception in this case may be again stated to be, not in the use of the name, but in the intentional appropriation of the peculiar advertisement of that name by plaintiff."

Ford Motor Co. v. Helms, supra, is also persuasive. In that case, the Court said [25 F.Supp. 699]:

> "The plaintiff seeks to protect its recognized good-will and trademarks from the loss that might come to it through the false assumption by the owners of cars of its manufacture, that the defendants maintain an authorized 'service station' where repairs upon Ford cars are made by those who have been selected by the plaintiff as competent to do that; and where authentic parts of the plaintiff's manufacture are used for necessary replacements."

Specific attention is also directed to Ford Motor Co. v. Benjamin E. Boone, Inc., supra.

Defendant argues that the so-called agency in the instant case is not an agency at all and that this basic requirement is important in all of the American decisions. The answer to this is that the contract in question furnishes enough control running from plaintiffs to the dealer to justify a conclusion that their

interest in good will extends to the retail level.

█ Defendant also argues that the large number of Volkswagens which have found their way to America and which are available for what might be for convenience termed the "grey" market, constitutes a waiver or estoppel by plaintiffs so as to bar the granting of equitable relief. There is substantial evidence that new or used Volkswagens are available outside the official channels of trade. From the evidence before us, however, we are not able to conclude that the plaintiffs are responsible for this and, in the present context at least, that they should be penalized on this account. The evidence goes no further than to furnish suggestions as to this.

█ The fact that the defendant is presently desisting from bold and blatant conduct does not justify and is not a reason for denying relief since defendant is unwilling to agree to maintaining the *status quo* until trial. Nor does the fact that the trial is imminent furnish a basis for denial of relief. If there is a genuine threat to resume the old practices, injunctive relief ought to be granted and the defendant's past conduct is not such as to give the slightest assurance that the defendant will refrain on any voluntary basis.

In the final analysis, there has been a substantial showing that the defendant has deliberately appropriated the plaintiffs' good will and the Court is convinced that the injury to be produced by such conduct is irreparable, thus justifying the drastic remedy here invoked. The Court is, therefore, of the opinion that the *status quo* should be maintained pending the final determination of the issues herein. It is, therefore,

Ordered that the defendant be enjoined pending trial, from the following:

1) Holding out to the public by signs, advertisements, representations, or other conduct of the kind that has heretofore been practiced by the defendant that the defendant is an authorized dealer in Volkswagen automobiles;

2) Using the term "authorized dealer" in such a relation to the name "Volkswagen" in signs, advertisements, or other printed manner so as to mislead the public and create the impression that defendant is an authorized dealer in Volkswagen automobiles;

3) Using the term "Volkswagen" in a manner which is designed to, or is likely to create the impression that defendant's dealership is in Volkswagen automobiles as well as Renaults; and

4) Using the symbols "VW", circled, or otherwise, in a manner which is designed to convey to the public that he is an authorized Volkswagen dealer.

Defendant is not restricted from selling Volkswagen automobiles, or advertising the fact that he has such vehicles for sale and he is, of course, free to advertise his dealership in Renault automobiles. The restraints here imposed go to misleading statements having a tendency to create in the minds of the public that defendant's dealership is in Volkswagen automobiles.

The Court refrains from determining the merits of plaintiffs' claims under the so-called Lanham Act (15 U.S.C.A. § 1051 et seq.) and thus does not determine the Interstate Commerce and other legal questions posed in connection with this request.

Plaintiffs shall post an indemnity bond in connection with the issue of this injunction, in the amount of $15,000.