**VOLKSWAGENWERK AKTIEN-GESELLSCHAFT**

**v.**

**Sylvia DREER and Morton Dreer, individually and doing business as Continental Imported Cars, and as Continental Imports.**

**Civ. A. No. 33577.**

United States District Court
E. D. Pennsylvania.

March 31, 1966.

See also D.C., 224 F.Supp. 744.

Dechert, Price & Rhoads, Arthur E. Newbold, III, Philadelphia, Pa., for plaintiff.

Blank, Rudenko, Klaus & Rome, Edwin P. Rome, Morris L. Weisberg, Philadelphia, Pa., for defendants.

KRAFT, District Judge.

The plaintiff, charging defendants with trade-mark infringement and unfair competition, seeks permanent injunctive relief. Suit is brought under the Trademark Act of 1946 (Lanham Act) 15 U.S.C. §§ 1114, 1121, 1126; the International Convention for the Protection of Industrial Property, 13 United States Treaties and Other International Agreements 1 (1962); and by reason of the diversity of citizenship of the parties and jurisdictional amount. The unfair competition claim is joined with the trademark claim under 28 U.S.C.A. § 1338(b). After final hearing, upon consideration of the record, the briefs and argument of counsel and suggested findings, we make the following:

### FINDINGS OF FACT

1. The plaintiff, a German corporation, organized and existing under the laws of the Federal Republic of Germany, is the owner of the registered trademark "VOLKSWAGEN".

2. The defendants, Sylvia and Morton Dreer, are citizens of Pennsylvania, who conduct an automobile sales business known as Continental Imported Cars and Continental Imports, in Cheltenham and Spring House, Pennsylvania.

3. Plaintiff maintains strict quality control in the manufacture of its automobiles. At every stage of production, tests are made to insure adherence to established high standards. Six thousand employees are engaged for these purposes to examine, check, and test all materials used in manufacture.

4. The plaintiff exports *all* of its automobiles which are intended for sale in

the United States to its wholly owned subsidiary, Volkswagen of America, Inc., (V A), a New Jersey corporation.

5. V A has engaged in an extensive advertising program to extoll the excellence of Volkswagen automobiles. Since 1959, about $18,400,000 has been spent in national advertising in magazines and network television.

6. V A is the exclusive *authorized* importer of the plaintiff's automobiles in the United States. V A distributes the plaintiff's vehicles to 14 wholesale distributors, who, in turn, have 860 *authorized* retail outlets throughout the United States.

7. Authorized distributors and retailers in the United States have also expended substantial sums in efforts to establish, nationally, an image of product quality and of dealer integrity, with particular emphasis on the reliability of used cars sold by franchised retailers.

8. In 1964, 313,000 Volkswagens were sold in the United States and over 1,800,000 are now in operation here, from a total of 8,500,000 units in use throughout the world.

9. The good will and good reputation enjoyed by the plaintiff's trademarks substantially exceed $10,000.

10. Retailers must meet certain requirements of character, reputation, business ability, automotive experience and financial stability to become authorized Volkswagen dealers.

11. Authorized retail dealers must adhere to strict standards governing the operation of all aspects of the sales and service of Volkswagen automobiles.

12. All authorized retailers are required to use the plaintiff's trademarks such as "VOLKSWAGEN," the initials "VW" standing alone and ![VW logo] These marks, titled in the name of the plaintiff, have been valid and enforceable at all times here relevant.

13. The trademark "VOLKSWAGEN" is generally displayed in a blue and white color combination and in a footed style of lettering known as "Memphis Bold", though some authorized dealers in Philadelphia have used signs with "VOLKSWAGEN" printed in a different style of lettering from "Memphis Bold".

14. "VOLKSWAGEN" is more frequently displayed horizontally above an authorized retailer's premises, but one authorized retailer in Philadelphia has displayed it vertically.

15. Authorized retailers generally are required by their franchise agreements to house their facilities in a fairly typical style of low building usually associated with VOLKSWAGEN, but variations do exist among authorized retailers in the size and shape of buildings and in the relationship of the service facilities to the showroom.

16. A substantial integral part of the sale of a Volkswagen automobile is the *service* rendered before and after delivery of the vehicle.

17. Authorized retailers are obliged to equip their service facilities with specially designed Volkswagen tools and parts.

18. V A and the authorized distributors conduct training of and exercise supervision of service personnel to provide a uniformly high standard of service to Volkswagen customers.

19. Authorized retailers are required by their franchises to examine, in detail, every aspect of the vehicle's operation before delivery of a new vehicle to a customer.

20. A book of service coupons is given to the customer with each new Volkswagen sold by an authorized retailer. The first coupon provides for pre-delivery service. Other coupons cover the 6 months or 6000 miles written factory warranty, and two free maintenance services, as well as lubrication and regular maintenance at specific mileage intervals.

21. The defendants have never been, and are not now, authorized or franchised dealers in the plaintiff's products.

22. The Volkswagen vehicles sold by defendants did not and do not carry a

factory warranty, despite defendants' advertisement of "Full Warranty". Customers purchasing purportedly "new" cars from the defendants must, in fact, pay for repairs which would be made by authorized dealers without cost upon a Volkswagen purchased as new from them.

23. Defendants have not employed and do not employ mechanics trained by authorized Volkswagen dealers nor do they maintain service facilities suitable for repairing Volkswagen automobiles. Their business place at Cheltenham is not equipped with a Volkswagen hoist nor with any special tools necessary to repair a Volkswagen.

24. Purchasers of purportedly "new" cars from defendants are not advised that they will not receive a factory warranty. If no inquiry is made, silence is the rule. An inquiring customer is informed what protection will be provided, but this may vary substantailly with each sale.

25. Purchasers of vehicles from defendants who returned for service have been received with perceptible hostility, and have received unsatisfactory service for even the most minor repairs. Repeated visits and prolonged waiting periods have been necessary to endeavor to obtain ordinary maintenance service from defendants. Parts have been supplied, when necessary, by cannibalizing other vehicles.

26. Defendants' signs and advertising represent service to be an important function of their business.

27. Since February 1, 1963, the defendants have been purchasing Volkswagens from the F. & D. Trading Corporation of New York, which were manufactured for European markets, but thereafter converted by others to render them saleable in the United States.

28. Workshops in Germany, unauthorized by and unaffiliated with the plaintiff, convert the European model cars by replacing, inter alia, windshields, headlights, bumper guards, speedometers and odometers, and taillight glass.

Speedometers are altered to register the speed in miles per hour and odometers are replaced to reflect distance in miles rather than Kilometers.

29. When such vehicles arrive at Newark, New Jersey, defendants select, by visual inspection, those they wish to purchase. Defendants are generally wholly uninformed of the prior ownership of these converted vehicles, which are sold to defendants as used cars. The defendant, Morton Dreer, inspects and purchases most of the cars. He does not rely on the odometer reading, because the mileage odometer replacement does not reflect the extent of prior usage of the vehicle registered on the removed kilometer odometer.

30. Signs of previous wear can often be concealed so artfully at the conversion workshops that the unskilled prospective purchaser would mistakenly conclude that the vehicle was a factory-fresh Volkswagen.

31. A substantial number of the converted vehicles so imported have had extensive use by former owners abroad before conversion.

32. The plaintiff has no control over the materials and workmanship employed in these conversion workshops, which produce vehicles generally inferior to the units manufactured by plaintiff exclusively for sale in the United States in workmanship, quality and safety features.

33. When the defendants began purchasing and selling Volkswagens, in 1963, they erected a large vertical sign at the corner of their Cheltenham premises, visible from every approach, reading "VOLKSWAGEN" in blue-footed style lettering against a white background.

Two other blue-lettered signs upon white backgrounds are prominently displayed at right angles reading
VOLKSWAGEN
Sales           "VOLKSWAGEN" is
Service.         repeated three more times around the perimeter of the Cheltenham building.

34. After plaintiff brought this action defendants changed their vertical sign by adding the letter "S" to the word VOLKSWAGEN and by changing

the color combination to red on white and by adding the words "USED" and "CARS" in small letters at the top and bottom of the sign. Otherwise, their signs are unchanged.

35. The defendants have other signs bearing the legends "AUTHORIZED FACTORY DEALER" and "AUTHORIZED SERVICE", which are designedly juxtaposed with the "VOLKSWAGEN" signs in such manner as to create the false impression that the defendants are authorized Volkswagen retailers.

The defendants are authorized retailers of certain other foreign cars, but they understate these affiliations by positioning the manufacturers' names and emblems in small letters beneath and beside "AUTHORIZED FACTORY DEALER".

36. Newspaper and classified telephone directory advertising by the defendants emphasizes the plaintiffs' trademark in a manner to mislead all but the wariest purchasers into belief that defendants are authorized Volkswagen retailers. For example:

V O L K S W A G E N S
1 9 6 4
FOR IMMED. DELIVERY
Leftover 1963 Exec. Models
$1, 4 7 5
Complete P.O.E. Price & Taxes
Immed. Deliv. 100 VSs in Stock
Incl. The New "1500" Series
GHIA CPES., SDNS., WGNS.
No Money Dn. 48 Mths. to Pay
Full Warranty Free Services
Selection of Guaranteed Used VW's
CONTINENTAL IMPORTS
8016 Ogontz Av.    WA 7–5454
(ACROSS GIMBELS CHELT'HAM)
VOLKSWAGENS
$1,475
(P. O. EMB.)
200 For Imm. Deliv.
Includ. the 1500 Series
CONTINENTAL IMPORTS
SALES & SERVICE
Now . . . at 2 locations
8016 OGONTZ AV.    WA 7–5454
ACROSS GIMBELS CHELTENHAM
RTE. 309 SPRINGHOUSE MI 3–1770

37. Consumer demand has consistently exceeded the available supply of new Volkswagens in the United States, and, in consequence, customers have had to await delivery from an authorized retailer for varying periods of time. Recognizing and intending to capitalize on this situation the defendants emphasize "IMMEDIATE DELIVERY" on a large sign over the front door of their Cheltenham premises, which, combined with the galaxy of "VOLKSWAGEN" signs, creates, as defendants intended, confusion in the minds of prospective purchasers manifested by the erroneous impression that the defendants are authorized and favored Volkswagen retailers.

38. The defendants have sold used Volkswagens as "new" cars and, in at least one instance, sold as "new" a damaged car which had been used for a substantial period in Germany. Defendants have also advertised and sold what they characterize as "executive cars", which defendants have represented to actual purchasers to be cars previously used only by executives of the plaintiff within its factory grounds for no more than 1200 miles. One such "executive car" had previously been owned and operated here for three years by Pennsylvania residents. Another had had two prior individual owners and had been badly damaged in a collision before its sale by the defendants.

39. At least three of the cars sold as "new" by the defendants have proven to be unsatisfactory and contained defects attributable to prior use and alteration.

40. The good will and reputation of the plaintiff has been materially injured by the deceptive practices of the defendants.

41. There is not only a real likelihood of confusion to prospective customers, but also confusion in fact on the part of actual purchasers of Volkswagen cars from the defendants that the latter are engaged in the operation of an authorized Volkswagen retail sales agency.

DISCUSSION

The proofs in this case fairly establish a deliberate appropriation by the

defendants of a distinctive method of advertising the plaintiff's commercial signature. By a skillful and studied imitation of the plaintiff's trademark "VOLKSWAGEN", emblazoned on signs with blue and white color combinations, the defendants have practiced actual fraud and deception on prospective Volkswagen purchasers of better than average education and background.

Upon approaching the defendants' Cheltenham premises the prospective purchaser is literally dazzled by a veritable host of "VOLKSWAGEN" signs and duped, as defendants intend, into the belief that an automobile and essential service of the quality and reliability generally associated with the plaintiff and its products could be purchased from the defendants. Instead, an average purchaser would receive a "used" car misrepresented as "new", or a vehicle once wrecked, but now disguised as a used car of prime quality and palmed off as an "executive model".

The plaintiff has expended huge sums to acquaint most Americans twice monthly with its commercial message of quality and reliability. Exploiting to the utmost the good will and consumer acceptance of the plaintiff's products, the defendants have deliberately deceived purchasers into purchasing as "new", reconditioned or converted used cars.

The evidence adequately establishes that a VOLKSWAGEN reconditioned or converted by European workshops is inferior in quality and safety to a VOLKSWAGEN manufactured *originally* by plaintiff for American consumption. Public reliance on the trademark VOLKSWAGEN has been achieved *in this country* by the performance of vehicles produced by the plaintiff for sale in the United States. The good will and fine reputation enjoyed by the plaintiff *in this country* has been developed and maintained by providing a comprehensive program of reliable service before and after the sale. The warranty and specialized service afforded by the plaintiff through its authorized dealers are inextricably interwoven into every sale, since the components of a VOLKSWAGEN are so engineered as to require special tools and parts of dimensions not common to American-made vehicles. It is essential, therefore, that a retail dealer maintain VOLKSWAGEN-trained mechanics, as well as service facilities and parts peculiarly adapted to repair plaintiff's vehicles.

The defendants maintain no such service facilities, causing purchasers to become dissatisfied with and inimical to the plaintiff's product with resultant loss of good will and future sales. Satisfied buyers of a new or used VOLKSWAGEN are likely to become the plaintiff's best "ads". The defendants' practices, as we have found, negate such probabilities and do substantial harm to the reputation and good will of the plaintiff. Defendants' purposeful attempts, by the means described, to cause prospective purchasers to believe that the defendants are an authorized Volkswagen sales agency succeeded in many instances and, if permitted to continue will probably induce the same belief in others who observe the misuse of plaintiff's trademarks.

When a seller palms off used goods as new, and sells used goods of an inferior quality by identifying the manufacturer with the goods of such inferior qualities, equitable principles require that injunctive relief be granted. Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386 (1947). The defendant by its appropriation and imitation of the plaintiff's trademark VOLKSWAGEN has deceived and is likely to continue to deceive the public into believing that the plaintiff's good will stands behind or is a part of the defendants' operation. Dodge Bros. v. East, 8 F.2d 872 (E.D.N.Y.1925); Volkswagenwerk G.m.b.H. v. Frank, 198 F.Supp. 916 (D.C.Colo.1961).

That plaintiff is the manufacturer and the defendant a retailer does not necessarily mean that the defendant is not in competition with the plaintiff. Their activities both concern the business of

sales and service of automobiles and are interrelated. Akron-Overland Tire Co. v. Willys-Overland Co., 273 F. 674 (3 Cir. 1921).; Dodge Bros. v. East, supra.

We see no reason why defendants should not be enjoined from displaying the trademark VOLKSWAGEN in a color combination of blue and white and in characters known as "Memphis Bold" lettering, which has become associated with the plaintiff by the general public. Moreover, so long as defendants continue to sell Volkswagen automobiles reconditioned or converted in Europe for sale in the United States, it appears reasonable to require that suitable notice of this fact should be given in any sign or advertisement.

We perceive no merit in the defendants' attack on the plaintiff's corporate existence. The defendants' answer did not properly raise this issue by mere denial of any information about it. Montellier v. United States, 202 F.Supp. 384, 390 (E.D.N.Y.1962), aff'd 315 F.2d 180 (2 Cir. 1963); Boston Ins. Co. v. City of New York, 130 F.2d 156 (2 Cir. 1942). We think, too, that defendants waived this defense when they omitted it from their motion to dismiss for failure to join indispensable parties. Rules 9(a), 12(h) Chemacid S. A. v. Ferrotar Corporation, 3 F.R.D. 45 (S.D.N.Y.1942). Equitable principles also preclude the untimely assertion of this defense after trial, since the defendants tacitly recognized the corporate existence of the plaintiff in their answer to the plaintiff's motion for a preliminary injunction.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and the subject matter.

2. The defendants have infringed and are infringing the plaintiff's trademark VOLKSWAGEN and have engaged and are engaging in unfair competition.

3. The defendants have employed and are employing the plaintiff's trademark VOLKSWAGEN in such a manner as to cause prospective purchasers to believe that the defendants are affiliated with the plaintiff or that defendants are a Volkswagen retail sales agency authorized by plaintiff.

4. The plaintiff has no adequate remedy at law and is entitled to injunctive relief.