**ALADDIN INDUSTRIES, INC.,**
**Plaintiff-Appellant,**

v.

**ALLADIN LAMP & SHADE CORP., and Dennis Lentin, Individually and d/b/a Alladin Lamp & Shade Corp., Defendants-Appellees.**

**No. 76–1269.**

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1977.

Rehearing Denied Sept. 26, 1977.

John Cyril Malloy, Miami, Fla., Theodore R. Scott, Chicago, Ill., for plaintiff-appellant.

Sheldon R. Rosenthal, Mallory H. Horton, Miami, Fla., for defendants-appellees.

Before THORNBERRY, GODBOLD and FAY, Circuit Judges.

GODBOLD, Circuit Judge:

This is a trademark infringement case. Plaintiff Aladdin Industries has used the trademark "Aladdin" since 1908, attempting to capitalize upon the mythological Aladdin of the Arabian Nights. It manufactures a kerosene lamp under that name, which since the 1930's has been sold with an electric adapter. Plaintiff also makes a special lamp shade for its product. Formerly the plaintiff sold a general line of electric lamps, but it discontinued the line in 1955.

Defendant Alladin [sic] Lamp & Shade Corp., a Florida corporation established in 1971, markets lamp shades under the name "Alladin." The district court found that plaintiff had failed to prove a case of trademark infringement, holding:

> The Court finds and concludes that due to the dissimilarity of the parties' products and the dissimilarity of the parties' merchandising of their corporate names, there is no confusion or likelihood of confusion from the mere use by defendant of the name "Alladin." [1]

█ The court referred to several areas of factual inquiry in support of its conclusion that there was no likelihood of confusion:

(1) Defendant makes only lamp shades, not lamps.

(2) Defendant's shades will not fit plaintiff's lamps, nor will plaintiff's shades fit ordinary lamps; therefore, the two products are so different as to be noncompetitive.

(3) Defendant's spelling, Alladin, is different (although the pronunciation is the same).

(4) The court found that defendant's merchandising of its corporate name is distinguishable from plaintiff's and is also distinguishable from the mythological lamp and "jinn" described in the Arabian Nights. On defendant's stationery next to its corporate name is a picture of a lamp, but the

---

1. Plaintiff had charged unfair competition, but the court found that there was none because plaintiff stipulated that it had no evidence of lost sales or profits. This aspect of the case is not questioned on appeal.

lamp was designed to be a likeness of the traditional lamp of knowledge, not a likeness of the lamp of Aladdin. The same lamp appears on defendant's collection card sent to delinquent customers, except that a genie is emerging from the lamp. Also, the card says, "We've sent this genie from Aladin to ask you for his pay." Plaintiff's stationery and literature contain no graphic representations of lamp or "jinn" [or "genie"]. A "jinn" and a "genie" are really not the same—i. e., rubbing Aladdin's lamp brings forth not "genies" but "jinns."

Several of these underlying facts are clearly erroneous.[2] Plaintiff does use a graphic representation of a lamp in conjunction with its corporate name—in evidence there are several specimens of plaintiff's current advertising materials, each bearing the lamp. According to Webster's Third New International Dictionary (1967) the words "genie" and "jinn" (and "djinn") are synonyms; in fact the derivation of "genie" is shown as having been influenced by the Arabic word "jinniy," meaning demon or spirit. Thus the court was incorrect in its idea that defendant's "genie" is distinguishable from a "jinn" that might be associated with plaintiff's effort to capitalize on Aladdin's mythical lamp.

The only testimony concerning the design of defendant's lamp was that of defendant's president. He did not testify that the representation of a lamp used by his corporation was designed to represent the lamp of knowledge and not the lamp of Aladdin, but rather that it varied from both the lamp of knowledge and the mythical Aladdin's lamp and was "reversed to the other side" and with a different handle. We have examined the drawings showing defendant's representation of a lamp and plaintiff's representation of a lamp, and they are strikingly similar.

Once these findings of fact are corrected, it becomes clear that plaintiff carried the burden of proving likelihood of confusion. Though the parties' products might not compete directly, the evidence is clear that the marketing practices and ad-

vertising materials of plaintiff and defendant are sufficiently similar that a potential consumer would likely conclude that both products issued from the same source. This is the harmful confusion against which the trademark law protects. *See Professional Golfers' Ass'n of America v. Bankers Life & Cas. Co.*, 514 F.2d 665 (CA5, 1975); *American Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619 (CA5, 1963).

REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

2. *See Chappell v. Goltsman*, 197 F.2d 837 (CA5, 1952).