**DR. ING. H.C.F. PORSCHE AG**

v.

**Aldwin H. ZIM et al.**

**Civ. A. No. 3–78–1034–G.**

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 31, 1979.

Carrington, Coleman, Sloman & Blumenthal by Fletcher L. Yarbrough and William B. Dawson, Dallas, Tex., for plaintiff; Herzfeld & Rubin, P. C., New York City, of counsel.

R. David Jones, Ft. Worth, Tex., for Zim Corp.

## MEMORANDUM ORDER

PATRICK E. HIGGINBOTHAM, District Judge.

This is an action for trademark infringement brought by plaintiff Dr. Ing. h.c.F. Porsche AG ("Porsche") against defendants Aldwin H. Zim, Edward Mayo, and Zim Corporation (collectively "Por-sha"). The case is submitted to the court on a stipulated record consisting of pleadings, briefs, memoranda of law, the depositions of the two individual defendants, and two affidavits submitted by Porsche. The parties agree that the sole issue for decision is whether defendants' use of the trade name "Por-sha" and its derivatives "is likely to cause confusion, or to cause mistake, or to deceive" within the meaning of the Lanham Act, 15 U.S.C. § 1114,[1] and hence constitutes trademark infringement. The agreement of the parties contemplates that the court may make any findings of fact necessary to its judgment. The parties are to be commended for their cooperative spirit and forthright conduct of this case.

### I. Facts

Plaintiff Porsche is the German manufacturer of Porsche automobiles. These vehicles are marketed in the United States by the Porsche-Audi Division of Volkswagen of America, Inc. ("VWOA"). Since 1952, over 125,000 motor vehicles manufactured by Porsche in the Federal Republic of Germany and having an aggregate retail value of over $500 million have been sold in the United States under Porsche's trademarks. In 1977, alone, over 19,000 Porsche motor vehicles were imported into and sold in this country under these trademarks.

Porsche has registered the word "Porsche" and the Porsche shield insignia in the United States Patent Office as its trademarks and service marks. Porsche has licensed VWOA, various wholesalers, and over 200 authorized retail distributors (including approximately 17 in the state of Texas) to use these marks in connection with the sale, service, and repair of Porsche products. The defendant has never been so licensed. Porsche, through VWOA, spends large sums of money advertising its products in this country in magazines and newspapers and on radio and television. In the period from 1970 through 1978, over $87 million was spent for this purpose. 1977 advertising expenses of $13,180,774 amounted to almost $700 per Porsche car sold in the United States. Much of this advertising prominently displays Porsche's trade name, trademarks, and service marks.

Defendants operate a Fort Worth automobile sales and service facility under the name "Por-sha."[2] This business, begun as a sole proprietorship, evolved into a partnership between defendants Zim and Mayo, and now consists of a corporation owned by Zim and Mayo together with related sole proprietorships dealing in Porsche parts, the racing of Porsche automobiles, and the operation of a body shop. The business specializes in the sale of used Porsche automo-

---

1. Also pending before the court is plaintiff's request for default judgment, filed after defendants failed to answer plaintiffs' amended complaint as required by Fed.R.Civ.P. 15(a). Defendants' answer having been filed four days after plaintiff's request, and no default having been entered by the clerk, the request is DENIED.

2. Other assumed names of defendants include Por-sha Parts, Por-sha Werk, and Por-sha Meister Racing.

biles and replacement parts for Porsche automobiles, and the repair and servicing of Porsche automobiles. With occasional exceptions, no work is done on other types of vehicles.

Defendants make extensive use of the name "Por-sha" and variations of that name in describing their business.[3] The name was selected by them to describe their business of selling and repairing Porsche automobiles. The name is pronounced "pôr-shä," and is intended to be phonetically identical to "Porsche." It is used by defendants in answering the telephone, in dealings with customers and suppliers, in advertising, and on signs at defendants' premises.

## II. The Lanham Act

The Lanham Act, 15 U.S.C. § 1114(1), provides that

Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

3. Defendants at one time made direct use of the name "Porsche" and the Porsche insignia, but claim to have discontinued such use.

Section 1127(b) defines "colorable imitation" to include "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive."

At the outset, it should be noted that the issue is not one of actual confusion. The test is whether ordinary purchasers of the defendants' goods and services, using ordinary caution, would be deceived. *Queen Manufacturing Co. v. Isaac Ginsberg & Brothers, Inc.*, 25 F.2d 284, 287 (8th Cir. 1928). Hence proof of actual confusion is unnecessary. *Electronics Corp. of America v. Republic Industries, Inc.*, 507 F.2d 409 (1st Cir. 1974), *cert. denied*, 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 102 (1975); *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 611 (7th Cir. 1965); *Esso, Inc. v. Standard Oil Co.*, 98 F.2d 1, 5–6 (8th Cir. 1938). Actual confusion is, however, extremely probative of the likelihood of confusion, in that proof of confusion by actual customers is strong evidence that a hypothetical reasonable customer would also be deceived. *Tisch Hotels, supra*, at 612; *Spangler Candy Co. v. Crystal Pure Candy Co.*, 353 F.2d 641, 644 (7th Cir. 1965); *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 761–62 (2d Cir. 1960); *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74 (10th Cir. 1958).

In the present case, there is evidence of actual confusion on the part of Por-sha customers. Por-sha has been asked to do Porsche warranty work, which of course can only be performed by an authorized Porsche dealer. Zim and Mayo have repeatedly found it necessary to advise customers that they are not connected with the Porsche organization. Zim testified that he has had "problems with people" about the spelling of his company's name. This problem has carried over to Por-sha's suppliers, who spell Por-sha's name in at least 16 different ways, many of which are direct variations of plaintiff's name.[4]

4. A survey of invoices sent to Por-sha by its suppliers reveals the following spellings:

■ The actual confusion described above is accompanied by, and indeed an inevitable result of, the high likelihood of confusion in the minds of the consuming public. While the plaintiff's and the defendant's trade names are visually distinguishable, they are identical in pronunciation.[5] This auditory similarity is an important factor in evaluating likelihood of confusion. *Grotrian, Helfferich, Schulz, Th. Steinweg Nachf v. Steinway & Sons*, 523 F.2d 1331, 1340 (2d Cir. 1975); *Esso, Inc. v. Standard Oil Co., supra*, at 5. See *Aladdin Industries, Inc. v. Alladin Lamp & Shade Corp.*, 556 F.2d 1263 (5th Cir. 1977). Indeed, it was this verbal similarity which prompted the choice of the name "Por-sha," as defendants wanted "a name that would tell what we did without using their name."[6]

Defendants argue that the prestige and high price tag of a Porsche automobile argues against the likelihood of confusion between Porsche and Por-sha. "Discriminating purchasers, those with special training or who purchase costly products, are thought to employ a higher degree of care and are more able to distinguish between trademarks." 1 Gibson, *Trademark Protection and Practice* § 5.08, at 5–59. It is true, as defendants so aptly point out, that Porsches are not Volkswagens.[7] This argument loses sight, however, of the fact that defendant specializes in the *service* and *repair* of Porsche automobiles and the sale of *used* automobiles. Those in the market for such products and services are likely to take less care in the selection of a dealer than are buyers of new Porsches, whose price may range up to $40,000.

There is little likelihood that the public may be confused into thinking that defendants' small sales and service facility in Fort Worth, Texas, is in reality a large foreign manufacturer. The issue is instead whether defendants' operation may readily be confused with an authorized Porsche dealership or repair facility, such as the 17 licensed retail distributors in Texas. The courts have repeatedly held retail automobile distributorships and repair shops to be guilty of trademark infringement or unfair competition where, as here, such establishments use or imitate the manufacturer's name or mark in their trade names. *Trail Chevrolet, Inc. v. General Motors Corp.*, 381 F.2d 353 (5th Cir. 1967); *Ford Motor Co. v. Benjamin E. Boone, Inc.*, 244 F. 335 (9th Cir. 1917); *General Motors Corp. v. Smith*, 138 USPQ 382 (S.D.Cal.1963); *General Motors Corp. v. Mac Co.*, 138 USPQ 169 (D.Colo.1963); *Lincoln Motor Co. v. Lincoln Automobile Co.*, 44 F.2d 812, 818 (N.D.Ill. 1930); *Dodge Bros. v. East*, 8 F.2d 872 (E.D.N.Y.1925); *Ford Motor Co. v. Weibel*, 262 F.Supp. 932 (D.R.I.1967); *Fiat, Societa per Azioni v. Vaughan*, 7 Misc.2d 4, 166 N.Y.S.2d 39 (1957), *modified and aff'd*, 5 A.D.2d 821, 170 N.Y.S.2d 627 (1958); and the Volkswagen cases cited in n. 7, *supra*.

### III. Conclusion

■ It is apparent that there is both actual and potential confusion resulting from defendants' use of the name Por-sha and its derivatives. The use of that name accordingly violates the Lanham Act, and judgment will be rendered for plaintiff.

Porsch; *Porsche Prod.*; *Porsche Parts*; *Porsche Service*; Porsha; *Porsche*; *Porsche Audi*; Porscha Parts; Porshia; Posche; *Porsche, Inc.*; Porschi; *Al Zim Porsche*; Por-Scha; Por Sha; and Al Zim c/o Por-she (emphasis supplied). While the relevant factor is confusion among customers, this confusion among suppliers indicates the likelihood of confusion by the public generally, including customers in particular.

**5.** Plaintiff's counsel has aptly described the two names as "auditory twins and ocular cousins."

**6.** Defendants went so far as to substitute "Por-Sha" for "Porsche" in their advertising: "Call us to discuss your PORSHA needs."

**7.** *Cf. Volkswagenwerk Aktiengesellschaft v. Tatum*, 344 F.Supp. 235 (S.D.Fla.1972); *Volkswagenwerk Aktiengesellschaft v. Volks City, Inc.*, 348 F.2d 659 (3d Cir. 1965); *Volkswagenwerk Aktiengesellschaft v. Dreer*, 253 F.Supp. 37 (E.D.Pa.1966); *Volkswagenwerk GmbH. v. Frank*, 198 F.Supp. 916 (D.Colo.1961); *Volkswagenwerk Aktiengesellschaft v. Karadizian*, 170 USPQ 565 (D.C.Cal.1971).