BELL v. CARTER et al.

(Circuit Court of Appeals, Eighth Circuit. October 8, 1908.)

No. 2,668.

1. TRIAL (§ 141*)—QUESTION FOR COURT OR JURY—DIRECTION OF VERDICT.

Whilst it is true that a substantial conflict in the evidence must be determined by the jury as a question of fact, it is also true that when the evidence is undisputed, or is so clearly preponderant that it reasonably admits of but one conclusion, the proper disposition of the case upon the evidence becomes a question of law, to be determined by the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig. § 141.*]

2. TROVER AND CONVERSION (§ 9*)—PROPERTY TAKEN FROM PRISONER BY SHERIFF—CONVERSION—DEMAND.

A sheriff, who takes from a prisoner in his custody property rightly belonging to the prisoner and thereafter surrenders it to another, in disregard of the prisoner's rights and in recognition of an adverse claim asserted by another, is guilty of a conversion, and becomes liable in trover, without any precedent demand for a return of the property.

[Ed. Note.—For other cases, see Trover and Conversion, Cent. Dig. §§ 60, 61; Dec. Dig. § 9.*]

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Colorado.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Ralph Talbot (Edward J. Boughton, J. H. Denison, and William H. Wadley, on the brief), for plaintiff in error.

A. R. Morrison (R. S. Morrison and Emilio D. De Soto, on the brief), for defendants in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

VAN DEVANTER, Circuit Judge. This was an action of trover for the alleged conversion of a gold ingot and 20 sacks of crushed gold and silver ores. At the trial, which was to a jury, the evidence, without any conflict, established these facts: The defendant was the sheriff of Teller county, Colo., and as such took the plaintiffs into custody upon a charge of larceny, which was subsequently dismissed. At the time of their arrest the plaintiffs had with them the ingot and ores and were the rightful owners thereof. The defendant took this property into his possession and custody, insisting that it was stolen, and then turned it over to one Burbridge, who was the secretary of the Cripple Creek District Mine Owners' & Operators' Association. Burbridge delivered the ores to the Eagle Ore Sampling Company, and shortly thereafter it disposed of them at the direction of the Mine Owners' & Operators' Association and paid to the latter the full value of them. Subsequently, when the criminal charge was dismissed, the plaintiffs commenced an action against the defendant in the district court of Teller county to compel the redelivery to them of the specific ingot and ores so taken from them. In that action the defendant answered under his personal oath, alleging that the property never belonged to the plaintiffs, that their possession had been without right and unlawful, that after the property came into his possession he delivered it to the Mine Owners' & Operators' Association as the agent of the real owner, and that the property had thus passed out of his custody and into the hands of its true and lawful owner. Without further pursuing their action for a redelivery, the plaintiffs then commenced the present action, charging an unlawful conversion of the property by the defendant. He answered with a general denial.

Apart from a dispute respecting the value of the property, the only possible conflict in the evidence related to the nature and purpose of the delivery to Burbridge. The Circuit Court was of opinion that the evidence, reasonably interpreted, admitted of but one conclusion; that is, that the delivery to Burbridge was intended to be, and was, a delivery to the Mine Owners' & Operators' Association, and was intended to be, and was, a repudiation of the claim of the plaintiffs, and a recognition of the adverse claim of another, of whom the association was claiming to be the agent. A verdict for the plaintiffs was accordingly directed, only the question of value being submitted to the jury.

Without questioning that the verdict was rightly directed, if the evidence reasonably admitted of no other conclusion than the one stated, the defendant insists that there was evidence which made the nature and purpose of the delivery to Burbridge a question of fact for the jury. It becomes necessary, therefore, to consider whether there

was a substantial conflict in the evidence on that point. If so, the insistence is well taken; otherwise, it is untenable. Whilst it is true that a substantial conflict in the evidence must be determined by the jury as a question of fact, it is also true that when the evidence is undisputed, or is so clearly preponderant that it reasonably admits of but one conclusion, the proper disposition of the case upon the evidence becomes a question of law, to be determined by the court. Robinson v. Denver City Tramway Co. (C. C. A.) 164 Fed. 174, and cases cited.

The chief item of evidence bearing upon the question under consideration was the defendant's declaration, in his sworn answer in the prior proceeding, that he had delivered the property to the Mine Owners' & Operators' Association as the agent of another claimant, whom he described as "its true and lawful owner." Of course, that deliberate and solemn declaration could not be easily overcome or lightly disregarded. His attention was directed to it when he was testifying in his own behalf, and all that he could say about it was that he did not remember making it. The substance of his other testimony, which was somewhat contradictory, is embodied in the following extract from his cross-examination:

"Q. What date did you deliver this (the property in question) over to the Mine Owners' Association? A. The same day it arrived in Cripple Creek. Q. The very day? A. Yes, sir. Q. Then it had been arranged in advance that it should be delivered to them as soon as it got there, had it? A. No, sir. Q. How did it come to happen, then, on the same day that you delivered it? A. In taking the ore from the express company's office I met Col. Burbridge, as I said awhile ago. Q. He was the secretary of this association? A. Yes, sir. Q. You say you delivered it to him simply for safe-keeping? A. I turned it over to him, and it was with the understanding that it was to go to the Eagle Ore Sampling Company's vault for safe-keeping, as I had no safe in which to keep it."

Other answers given by him indicated that, shortly after he delivered the property to Burbridge, he was looking to the Mine Owners' & Operators' Association, rather than to the Sampling Company, for indemnification, if he met with loss by reason of what was done. One of his witnesses, a deputy sheriff, testified that he put the sacks of ore in the Sampling Company's vault at the direction of Burbridge, and also turned over to him the gold ingot; and another of his witnesses, the manager of the Sampling Company, testified that that company received the ore from the Mine Owners' & Operators' Association and did not know the defendant in the transaction, that the ore was disposed of at the direction of the association and payment therefor was made to it, that the course pursued was the same as in other cases where ore had been seized by the association, and that the gold ingot was not delivered to the Sampling Company. There was no evidence that Burbridge was a suitable person to be charged with the safe-keeping of the property, or that he had any official connection with the Sampling Company, or that he had actual or apparent authority to speak for it, or that the defendant exacted from him or it a receipt acknowledging that the property was received for safe-keeping merely. Burbridge was not called as a witness, and it was conceded

that the gold ingot went to the Mine Owners' & Operators' Association, and not to the Sampling Company.

From this recital of all the evidence upon the subject it is apparent that the conflict therein respecting the nature and purpose of the delivery to Burbridge resulted from the conflicting statements in the personal testimony of the defendant, and that but for his statement, repeated two or three times, that that delivery was upon the understanding that the property was to be placed in the vault of the Sampling Company for safe-keeping the evidence would all have been the other way. That statement is not only without corroboration, but is altogether inconsistent with his statement that he turned the property over to the Mine Owners' & Operators' Association on the very day that he reached Cripple Creek with the prisoners and the property, is inconsistent with his conduct at the time and shortly thereafter, is inconsistent with his deliberate and solemn declaration in his sworn answer in the other case, is inconsistent with what was actually done by Burbridge, the association and the Sampling Company, and is inconsistent with the reasonable purport and effect of the testimony of the deputy sheriff and the manager of the Sampling Company. In that situation we think that the conflict in the evidence was unsubstantial and that, reasonably considered, the evidence that the delivery was actually to the Mine Owners' & Operators' Association, and was in disregard of the plaintiffs' claim and in recognition of an adverse claim, was so clearly preponderant that no other conclusion was reasonably admissible.

It is also said that, as the defendant lawfully came into possession of the property, he could not be charged with conversion in the absence of a proper demand for its return. Ordinarily that would be so; but when such a custodian delivers the property to another in disregard of the rights of the owner, and so puts it out of his power to return it, he makes a demand unnecessary. 2 Cooley on Torts (3d Ed.) 870 et seq.; 1 Chitty on Pleadings (16th Am. Ed.) *178.

As it follows that a verdict for the plaintiffs was rightly directed, the judgment is affirmed.