REGAS, Respondent, vs. HELIOS, Appellant.

*December 15, 1921—January 10, 1922.*

*Principal and agent: Agent intrusted with money: Commission: Good faith.*

1. The defendant, who advised the plaintiff to invest in the stock of a supposed corporation, and, under directions to make such an investment and bring plaintiff the certificate of stock, received moneys which he deposited in his bank to his private account and later paid to the agent of the purported corporation, taking the receipts therefor in his own name and not delivering to plaintiff any certificate, is guilty of conversion.
2. Money which has been intrusted to an agent for a special purpose and to be used in a particular manner is converted if the agent disposes of the property in a way or for a purpose not authorized, in a manner adverse to the owner, and inconsistent with his right of dominion.
3. In this state money is a subject of conversion.
4. That one charged with conversion acted in good faith is no defense, wrongful intent not being an essential element of conversion.

APPEAL from a judgment of the circuit court for Milwaukee county: W. B. QUINLAN, Judge. *Affirmed.*

For the appellant there was a brief by *Gugel & Greenthal* of Milwaukee, and oral argument by *F. H. Gugel.*

*A. W. Richter* of Milwaukee, for the respondent.

JONES, J. This case is the story of the sad adventures of two Greeks in the realm of high finance.

In November, 1919, *James Regas,* plaintiff, and *Aristomanes Helios,* defendant, were neighbors and friends and lived in Milwaukee. The plaintiff had a shoe-shine parlor and defendant owned a barber shop. At this time one M. A. Dodge came into public notice as one who was said to be making fabulous sums from enterprises which were involved in more or less mystery, although it was reported that the production of films and a chain of ten-cent stores were among the sources of his wealth. The defendant testi-

fied that he himself had invested money in the Dodge cor-
poration.

Plaintiff's testimony tended to prove that his attention
was directed to the alluring enterprise by defendant, who
expatiated upon the brilliant prospects and gave it as his
opinion that by an investment of $1,000 plaintiff would be
paid $2,000 in three months. Plaintiff paid over to de-
fendant at first $850 and a little later $150. Defendant de-
posited these sums in his bank in his own name to his own
account, and when Thurow, the agent of Dodge, returned
from a short absence, paid the $1,000 to him and took re-
ceipts in his own name.

It is agreed that the Dodge scheme was a swindle; that
there was no corporation; that Dodge "is doing time" and
his agent Thurow was under arrest. As to other questions
in issue the testimony is in conflict. The evidence of plaint-
iff tends to show that defendant agreed to invest the money
in a corporation and bring to him the certificate of stock.
This was denied by defendant. Plaintiff testified that de-
fendant showed him the receipt, which he refused to accept.
Defendant claimed that plaintiff made no objection to it,
but asked defendant to hold it in his custody for safe keep-
ing, and that he directed the investment to be made in the
Dodge corporation in defendant's name.

When the time came for the returns which were expected,
plaintiff began to ask for money and succeeded in getting at
different times sums amounting to $400. Defendant claimed
that these sums were loans, and plaintiff claimed that
they were part payments of the $1,000 made after insistent
demands and that defendant made repeated promises to pay
the balance. After the Dodge bubble exploded the friend-
ship between the two parties cooled to such an extent that
plaintiff brought suit and had defendant arrested on a civil
warrant.

It was held in both the civil and the circuit courts that
defendant had converted the $1,000. The circuit judge

found as facts that the money was delivered to defendant on the express agreement that it should be invested in the name of plaintiff in a corporation and that the papers to be issued by it should be delivered to him within a few days after the receipt of the money; that no part of it should be used by defendant as his own and that no part of the investment should be made by defendant in his own name; that the $850 and $150 were deposited in defendant's name as above stated; that defendant failed and refused to invest the $1,000 in any corporation and in the name of plaintiff; and failed and refused to deliver to plaintiff any papers evidencing an investment in the name of plaintiff; that he converted the same to his own use, contrary to the instructions and agreement; and that he had returned $400 and had failed to return the balance.

The defendant made his first mistake when, without investigation, he advised his friend, the plaintiff, to make an investment in a speculative enterprise; but many men of more experience than defendant have given such advice and lived to regret it. He made another mistake in volunteering to act as agent in making the investment. So long as he acted in good faith these acts did not subject him to liability, but his mistakes did not end here. He proceeded to treat the money as his own by mingling it with his own funds, and thus assumed dominion over it. Instead of investing the funds in a corporation and securing a stock certificate and delivering it to plaintiff, as directed, he made an investment, if it may be so called, of an entirely different kind, for which he took a receipt in his own name. Whether the action of plaintiff in determining to make the investment was wise or unwise, he had the right to make such restrictions as he saw fit. If defendant had found that no such corporation as he had mentioned existed and had so informed plaintiff, the authority given might have been revoked.

The money was intrusted to defendant for a special purpose and to be used in a particular manner. It has some-

timès been held that where an agent parts with property which he is authorized to sell for less than the stipulated price there is no conversion. See cases cited in *Laverty v. Snethen,* 68 N. Y. 522. But this is not the rule where he disposes of the property in a way or for a purpose not authorized, in a manner adverse to the owner and inconsistent with his right of dominion. That this is a conversion has been the rule for centuries. *Wilbraham v. Snow,* 2 Williams' Saunders' Rep. 87; *Boldewahn v. Schmidt,* 89 Wis. 444, 62 N. W. 177; *Laverty v. Snethen,* 68 N. Y. 522.

Although it has been sometimes held that money is not the subject of conversion, it is not the rule in this state. In an early case it was said by Mr. Justice PAINE:

"The only difficulty growing out of the nature of money is, as some of the cases have said, a difficulty of fact and not of law. In law, the rights of the parties in respect to the money are the same as in respect to any other property. The only difference is, that the identity of money is more easily destroyed than that of other property, and where the agent has so destroyed it, it can no longer be specifically recovered; not because the right no longer exists, but because of the difficulty in fact. But this difficulty does not exist in respect to the question of the liability of the agent for the conversion. So far as that is concerned, there is no more difficulty in showing its conversion than in showing the conversion of any other property. And that being so, it would follow that the agent should be held liable for converting it upon the same principle that he would be for converting any other." *Cotton v. Sharpstein,* 14 Wis. 226; note 20 L. R. A. n. s. 35; *Meyer v. Doherty,* 133 Wis. 398, 113 N. W. 671; *Milbrath v. State,* 138 Wis. 354, 120 N. W. 252; 26 Ruling Case Law, "Trover," § 8.

Although it is urged that defendant acted in good faith, this is no defense. Wrongful intent is not an essential element of conversion. *Boldewahn v. Schmidt,* 89 Wis. 444, 62 N. W. 177; *Cernahan v. Chrisler,* 107 Wis. 645, 83 N. W. 778; *Laverty v. Snethen,* 68 N. Y. 522; *Boyce v. Brockway,* 31 N. Y. 490, 493.

Defendant's counsel urge as error that testimony tending to prove statements of plaintiff's agent was rejected; but there was no sufficient proof of agency.    It is also urged that plaintiff acquiesced in the defendant's dealing with the money intrusted to him.    The trial court found no such acquiescence, nor do we.    There is testimony that plaintiff repudiated the transaction when the receipt was shown him and afterward repeatedly and insistently demanded his money.

*By the Court.*—Judgment affirmed.