TRACTORTECHNIC GEBRUEDER KULENKEMPFT AND CO., Technische Gesellschaft, a foreign corporation, Plaintiff,

v.

John H. BOUSMAN, sole owner, d/b/a Speed Cat Tractor Sales, Defendant.

No. 67-C-348.

United States District Court
E. D. Wisconsin.
June 19, 1969.

See also, D.C., 45 F.R.D. 89.

David Rabinovitz, Sheboygan, Wis., for plaintiff.

James J. Caldwell, Waukesha, Wis., for defendant.

## DECISION

MYRON L. GORDON, District Judge.

The plaintiff, Tractortechnic, seeks to recover damages for an alleged conversion of certain tractor parts by the defendant, John Bousman, d/b/a Speed Cat Tractor Sales. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332(a). The case was tried to the court without a jury.

A jurisdictional point was raised by the defendant at the close of the plaintiff's case. The defendant asserted that its answer had put in issue the plaintiff's corporate existence and capacity to sue, and that the plaintiff's failure to offer proof on this point means that the plaintiff failed to prove a material fact.

The defendant's answer asserted that the defendant "denies information sufficient to form a belief as to whether the plaintiff is a corporation incorporated under the laws of the Federated Republic of Germany * * *." The mere denial of information in the answer about the plaintiff's corporate existence is not sufficient to raise this

issue. Rule 9(a), Federal Rules of Civil Procedure, provides, in part, that

"When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by *specific negative averment*, which shall include such supporting particulars as are peculiarly within the pleader's knowledge." (emphasis added)

A mere denial of information is not the equivalent of a specific negative averment. See Volkswaganwerk Aktiengesellschaft v. Dree, 253 F.Supp. 37 (E.D. Pa.1966) and Montellier v. United States, 202 F.Supp. 384 (E.D.N.Y.1962). Since the plaintiff's identity was not properly put in issue, the plaintiff's failure to offer proof on this point is not critical.

The evidence shows that the plaintiff, a manufacturer of tractor parts, sold on credit approximately $51,000 worth of such parts to the Southern Tractor Parts Corporation; the latter corporation is not a party to this action. The plaintiff was to retain title to the tractor parts until payment was made by Southern Tractor. Sometime early in 1966, Southern Tractor delivered a portion of these same parts to the defendant in Waukesha, Wisconsin. There is no competent evidence as to the arrangements between Southern Tractor and the defendant concerning this delivery; there is also no evidence as to what portion of the original shipment of parts was delivered to the defendant.

Southern Tractor paid $25,000 of the amount it owed to the plaintiff, but the balance due was not remitted. To evidence its retention of title in the parts, representatives of the plaintiff met with Southern Tractor early in July, 1966, at the defendant's offices in Waukesha. An inventory of the parts was made and, in the defendant's presence, the plaintiff and Southern Tractor entered into a security agreement covering the parts (Pl. exh. 3). The security agreement recited that Southern Tractor "hereby grants to Tractortechnic * * * a security interest in * * * all tractor parts and merchandise manufactured by the Secured Party. * * *"

Southern Tractor also assigned its account with the defendant to the plaintiff (Pl. exh. 2). The assignment, also executed in the presence of the defendant, stated in part that

"For value received, the undersigned, SOUTHERN TRACTOR PARTS CORPORATION, hereby assigns the following described account, to-wit:

SPEED CAT TRACTOR SALES

JOHN H. BOUSMAN....

TO TRACTORTECHNIC.... All payment upon said account shall be made direct to said assignee * * *. *Said account consists of tractor parts manufactured by said assignee and to which said assignee retains title.*" (emphasis added)

The parties have stipulated that both the security agreement and the assignment were properly filed in conformance with the applicable provisions in the Uniform Commercial Code.

The defendant acknowledged at the trial that it was his understanding that he was to remit directly to the plaintiff the receipts, less his commission, for the sales of these tractor parts that he might make; he was to make no payment to Southern Tractor.

On July 22, 1966, Mr. Tex Boyles, Southern Tractor's president, wrote the defendant and stated that the previously mentioned agreements were no longer valid because Tractortechnic had been paid the full amount to which it was entitled (Pl. exh. 8). This assertion was contradicted in a letter to the defendant by the plaintiff's then attorneys. That letter, dated July 27, 1966, stated that Mr. Boyles was incorrect in asserting that such agreements were of no effect, and that "This will confirm our understanding that you will not allow any further disposal of the parts until you receive instructions * * * from Tractortechnic concerning any future disposal of same, despite any action Mr.

Boyles may attempt to take on his own." (Pl. exh. 4). Other assertions of continued ownership were also made by the plaintiff or its legal representatives. (Pl. exh. 5, 6, 7, 9, 23). However, because of their hearsay nature, none of the above-mentioned letters asserting or denying ownership in the plaintiff was received in evidence for the truth of the matters contained therein. They were received only for any notice value they might contain. There is, therefore, no competent evidence in the record to indicate that there had been any change in the relationship of the parties subsequent to the early June execution of the security agreement and assignment which were made in the defendant's presence.

On October 1, 1966, the defendant permitted Southern Tractor to remove from its premises those tractor parts which the defendant had been unable to sell. The defendant did not inform the plaintiff that this had occurred until December 15, 1966. By letter of that date, the defendant made this disclosure and remitted to the plaintiff $1,483.11 as payment, less commission, for those tractor parts which the defendant had actually sold subsequent to the assignment.

After a letter from the plaintiff to the defendant (Def. exh. 26), in which the plaintiff made some mention of instituting legal proceedings against Southern Tractor, the plaintiff elected to bring this action against Mr. Bousman, alleging that he had converted the parts, knowing them to belong to the plaintiff. It is the defendant's position that the return of the parts to Southern Tractor, his transferor, was proper.

It is my opinion that the defendant's return of the tractor parts to Southern Tractor was, under the circumstances, an actionable wrong, entitling the plaintiff to such damages as he might prove.

■ There is no dispute that Southern Tractor assigned its account with the defendant to the plaintiff. That assignment stated that "said account consists of tractor parts manufactured by said assignee. * * *" The words of an assignment are to be construed according to their ordinary meaning. Tullgren v. School District, 16 Wis.2d 135, 113 N.W.2d 540 (1961). It was not only the right to payment for the parts which was assigned, but any interest that Southern Tractor may have had in *the parts themselves*.

As stated in Tullgren v. School District, supra, at 142, 113 N.W.2d at 544,

"As a general rule, a valid and unqualified assignment operates to transfer to the assignee all the right, title, or interest of the assignor in the thing assigned, but not to confer upon the assignee any greater right or interest than that possessed by the assignor, nothing remaining in him capable of being assigned, and the assignor has no further interest in the subject matter of the assignment."

■■ Upon effectuating the assignment, therefore, Southern Tractor had completely eliminated itself from the picture, both as to the parts themselves and as to payment on the account. The defendant was present when the assignment was executed, and he had notice of its existence. Mr. Bousman testified that he was aware that he was to bypass Southern Tractor as to all remittances; he stated, however, that he could not recall who had ownership of the parts. He must have been aware of the plaintiff's title no later than July 27, 1966 (prior to the time he allowed Southern Tractor to reclaim the parts) when he received copies of the security agreement and assignment. While a debtor may pay the assignor prior to the notice of the assignment, he may not do so after notice is given. Drzewiecki v. Stempowski, 232 Wis. 447, 287 N.W. 747 (1939); Mowry v. Crocker, 6 Wis. 326 (1858). Likewise, the defendant could have returned the parts to Southern Tractor prior to notice that Southern Tractor had assigned its interest in the parts, but not afterwards. Since the parts were returned after such notice, the defendant improperly permitted Southern Tractor to reclaim them.

The defendant's delivery to Southern Tractor constituted a conversion of the plaintiff's property. The defendant had proper possession of the parts, and the conversion consists of his release of the parts to Southern Tractor in the face of the facts heretofore recited. An action for conversion may be based on the giving up of possession of the owner's property to one not authorized to receive it by such owner. Bell v. Carter, 164 F. 417, 19 L.R.A.,N.S., 833 (8th.Cir. 1908). That Mr. Bousman may have acted in good faith and with no evil intent is immaterial where, as here, he was aware that the plaintiff had title. He could not dispose of the property without the owner's consent. Heuer v. Wiese, 265 Wis. 6, 60 N.W.2d 385 (1934); Regas v. Helios, 176 Wis. 56, 186 N.W. 165 (1922).

Having determined that an unlawful conversion took place, the court must next address itself to the question of damages. In an action for conversion the plaintiff may recover the value of the property at the time and place of the unlawful act, plus interest. Traeger v. Sperberg, 256 Wis. 330, 41 N.W.2d 214 (1949). However, since the purpose of the rule is to compensate the plaintiff for the loss sustained because his property was taken, when a party has contracted to sell the property, but is prevented from doing so by the conversion, the *Traeger* decision shows that a plaintiff is entitled to the amount he would have received under the agreement. In my opinion, the plaintiff has failed to prove his damages under either arm of this test.

While the evidence shows that the contract price of the entire original shipment to Southern Tractor was $51,837.52, and that $25,000 of this was later paid by Southern Tractor to the plaintiff, we know only that a "portion" of these parts was subsequently delivered to the defendant. When asked the value of the merchandise shipped to him, the defendant stated that he "couldn't say". I cannot conclude with reasonable certainty that the portion of the parts originally delivered to the defendant equals the purchase price less the $25,000 payment.

Mr. Bousman was asked whether the amount of the inventory taken in July, 1966 was $22,401.55, the amount demanded in the complaint. The defendant replied "Yes, that sounds like it to us." However, it is undisputed that Mr. Bousman had made sales of some of the tractor parts both prior and subsequent to the time the inventory was taken. Parts worth $2,591.24 were sold after the inventory date, and of this $1,483.11 was remitted to the plaintiff after his commission was deducted. In addition, the defendant also sold parts prior to the time that the inventory was taken. The following testimony was given regarding this point:

"Q Did you check, Mr. Bousman from last Friday approximately how much you sold before July of this merchandise? Can you give us some idea?

"A I couldn't. I looked up a few of the checks that I had paid Southern Tractor.

"Q How much would it be about?

"A Approximately $2300."

It is not clear whether the $2,300 refers to the total of "a few of the checks" that Mr. Bousman had before him, or the amount of sales made by him before July.

In my opinion the record does not disclose with a reasonable degree of certainty, the amount of the tractor parts sold by Mr. Bousman before the inventory. A computation of the amount converted by the defendant would involve speculation on two items: (1) that the amount originally sent to the defendant was $51,837.52 less $25,000; and (2) that the amount sold prior to the inventory was $2,300. I cannot make such assumptions. The result is a lack of proof as to the value of the parts in the hands of the defendant.

It is appropriate for the court to dismiss an action when the plaintiff fails to prove damages. See Steel v.

Ritter, 16 Wis.2d 251, 114 N.W.2d 436 (1962); Tri-State Produce Co. v. Chicago, B. & Q. R. Co., 104 F.Supp. 452 (N.D.Iowa 1952).

There are cases in which nominal damages have been allowed where the plaintiff has established a wrong, but has failed to offer any evidence from which the court could make a reasonable determination as to the extent of the damages. Rockhill Iron & Coal Co. v. City of Taunton, 273 F. 96 (1st Cir. 1921); Siegfried v. Kansas City Star Co., 193 F.Supp. 427 (W.D.Mo.1961), aff'd 298 F.2d 1 (8th Cir. 1962). Cf. Gould v. Mountain States Tel. & Tel. Co., 6 Utah 2d 187, 309 P.2d 802 (1957).

However, in view of the fact that the plaintiff failed to offer sufficient evidence upon which this court can make a reasonably accurate determination of the amount of the tractor parts converted or their value, I conclude that the action must be dismissed.

Therefore, it is ordered that the complaint be and hereby is dismissed, without costs.