In re MODERN TEXTILE, INC., Debtor.

Al KOPOLOW and Al Kopolow Investment Company, Plaintiff,

v.

P.M. HOLDING CORPORATION, A. Thomas DeWoskin, Trustee and Continental Textile Corporation of America, Defendants.

Bankruptcy No. 80–02398(2).
Adv. No. 80–0390(1).

United States Bankruptcy Court, E.D. Missouri, E.D.

March 2, 1983.

Alan E. Popkin, St. Louis, Mo., for plaintiff.

Martin M. Green and Gregory D. Hoffman, Clayton, Mo., for defendants.

Curtis L. Mann, Clayton, Mo., for Trustee.

## MEMORANDUM OPINION

ROBERT E. BRAUER, Bankruptcy Judge.

Plaintiffs filed a three-count Complaint (Plaintiffs' First Amended Petition), on July 1, 1981, seeking a judgment against the Defendants jointly and severally for damages incurred as a result of the breach of three contracts by the Debtor, Modern Textile, Inc., and the written guaranty of Debtor's performance under those contracts by Defendants, P.M. Holding Corporation (P.M.) and Continental Textile Corporation of America (Continental). The Defendants, Continental and P.M., filed their Answer and a Counterclaim against the Plaintiffs on July 28, 1981. The Defendant, A. Thomas DeWoskin, Trustee in Bankruptcy for the Debtor, filed his Answer and Counterclaim on July 29, 1981. Both Counterclaims allege that the Plaintiffs made fraudulently false statements and representations in connection with the sale of certain business assets to the Debtor.

Plaintiffs' Complaint and Defendants' Counterclaim arise out of the sale of assets of Modern Textile Company to Modern Textile, Inc., the Debtor, during the summer of 1977. Plaintiff, Al Kopolow was the chief executive officer and a principal shareholder of Modern Textile Company at the time the company's assets were sold to the Debtor. Plaintiff, Al Kopolow Investment Company, is alleged to be the successor corporation to Modern Textile Company, that is, Al Kopolow Investment Company is alleged to be Modern Textile Company with a change of name. In connection with the transfer of assets to Debtor, several documents were executed, including: (1) an Employment Agreement by and between Al Kopolow and Modern Textile, Inc. (Plaintiffs' Exhibit 1D); (2) a Purchase Agreement by and between Modern Textile Company and Modern Textile, Inc. (Plaintiffs' Exhibit 1A); (3) a sublease of real property located in Clarksville, Missouri, by and between Modern Textile Company and Modern Textile, Inc., (Plaintiffs' Exhibit 1B); (4) a lease of real property located on Fee Fee

Road, St. Louis County, Missouri, by and between Modern Textile Company and Modern Textile, Inc. (Plaintiffs' Exhibit 1C); and (5) an Assurances Agreement, by and between Modern Textile Company and Al Kopolow and the Debtor, Continental, and P.M. (Plaintiffs' Exhibit 1E), in which the Debtor, Continental, and P.M. all guaranteed Debtor's performance under the Employment Agreement, the two lease agreements, and the Purchase Agreement. Both the Debtor and Continental are corporate subsidiaries of P.M.

### Counts I and II

In Count I of its Complaint, Plaintiff, Al Kopolow Investment Company, seeks reimbursement for certain unpaid lease payments and expenses pursuant to the sublease of real property in Clarksville, Missouri, by and between Modern Textile Company and the Debtor. The real property in question is owned by the City of Clarksville, Missouri, and was leased by the City-lessor to a corporation known as Kamp Togs, Inc. by a lease executed on January 1, 1963. The lease is executed by the mayor of the City of Clarksville, and by Jack Kopolow as Vice-President of Kamp Togs, Inc. Jack Kopolow's signature was attested to by Al Kopolow as Secretary. (Defendant's P.M. Exhibit A). In an undated document labeled "Sub-Lease," Modern Textile Company sub-leased the same parcel of Clarksville, Missouri, property to the Debtor for a period of ten years beginning June 1, 1977.

In Count II of its Complaint, Plaintiff Al Kopolow Investment Company, seeks reimbursement for certain unpaid lease payments and expenses pursuant to a lease of real property on Fee Fee Road in St. Louis County, Missouri, by and between Modern Textile Company and the Debtor commencing June 1, 1977.

The Defendants attack Al Kopolow Investment Company's right to relief, upon said Counts I and II, on the theory that the Investment Company did not establish an ownership interest in either lease that would permit it to recover damages for any breach of those leases by the Debtor. In response to that argument, Plaintiff asserts that the Defendants did not properly raise this issue and therefore waived it.

The Plaintiff cites Fed.R.Civ.P. 9(a) which requires that "when a party desires to raise an issue as to ... the capacity of any party to sue or be sued ..., he shall do so by *specific negative averment* ...." (emphasis added). A denial for lack of knowledge or information sufficient to form a belief has been held insufficient to constitute a "specific negative averment" within the meaning of Fed.R.Civ.P. 9(a). *Tractortechnic Gebrueder Kulenkempft & Co. v. Bousman,* 301 F.Supp. 153, 154–155 (E.D.Wisc.1969); *Volkswagenwerk Aktiengesellschaft v. Dreer,* 253 F.Supp. 37, 43 (E.D.Pa.1966). Defendants' Answer contains a general denial for lack of knowledge or information sufficient to form a belief as to the truth of the matters alleged with respect to Al Kopolow Investment Company.[1]

Defendants, however, do not challenge the Plaintiff's capacity to sue, but rather challenge whether or not Plaintiff is the real party in interest in the case. The concept of capacity relates to party's personal right to litigate a cause of action, as, for example, whether a party is mentally competent or not an infant or has the requisite corporate status. *E.g., Moore v. Mat-*

---

1. The Plaintiffs stated in Paragraph 3 of their Complaint:

 3. Plaintiff Al Kopolow Investment Company (formerly Modern Textile Company), Defendant P.M. Holding Corporation and Defendant Continental Textile Corporation of America are all corporations duly organized and existing pursuant to law.

 In Paragraph 1 of their Answer, Defendants P.M. and Continental states:

 1. Defendants admit the allegations of Paragraphs ... 3 ... of Plaintiffs' First Amended Petition, with the exception that Defendants do not have knowledge or information sufficient to form a belief as to the truth of the matters alleged with respect to Al Kopolow Investment Company and, therefore, deny the same. For the purposes of this Answer, however, Defendants assume, based on Plaintiffs' allegations, that Plaintiff Al Kopolow Investment Company and Modern Textile Company are the same business entity.

*thew's Book Co., Inc.,* 597 F.2d 645 (8th Cir., 1979) (corporation which has forfeited its corporate charter lacks capacity under Missouri law to sue). The concept of the real party in interest focuses on whether or not a party "possesses the right sought to be enforced" and whether or not a party "has a significant interest in the particular action he has instituted." 6 C. Wright & A. Miller, *Federal Practice and Procedure,* 1542 (1971); *Iowa Public Service Company v. Medicine Bow Coal Company,* 556 F.2d 400, 404 (8th Cir.1977).

Fed.R.Civ.P. 17(a) requires that "every action shall be prosecuted in the name of the real party in interest." (Missouri law contains a comparable provision: "Every civil action shall be prosecuted in the name of the real party in interest..." Mo.Rev. Stat. § 507.010; Mo.Sup.Ct.R.Civ.P. 52.01). The purpose of the rule "is simply to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the judgment will have its proper effect as *res judicata.*" Fed.R.Civ.P. Rule 17, 28 U.S. C.A., Notes of Advisory Committee on Rules, 1966 Amendment; *Dubuque Stone Products Co. v. Fred L. Gray Co.,* 356 F.2d 718, 723 (8th Cir.1966). The Federal Rules of Civil Procedure contain no requirement that an objection to a party's status as the real party in interest to a claim be raised in a particular manner or at a particular time. To put Plaintiffs' status as the real party in interest at issue, it is sufficient that the Defendants, in their Answer, plead lack of knowledge or information sufficient to form a belief as to the truth of the averment. This has the effect of a denial under Fed.R.Civ.P. 8(b). I find that the Defendants, by their Answer, have properly raised the issue of whether or not Plaintiff, Al Kopolow Investment Company, is the real party in interest.[2]

Plaintiffs bear the burden of proving that Al Kopolow Investment Company is the real party in interest and therefore entitled to recover for any damages incurred as a result of a breach, by the Debtor, of either the Clarksville sublease or the Fee Fee lease. In my judgment, the Plaintiffs have not met their burden of proof. Both leases are between Modern Textile Company and Modern Textile, Inc. The name Al Kopolow Investment Company does not appear on either lease. Plaintiffs' evidence as to Al Kopolow Investment Company's right to recover under leases signed by Modern Textile Company consists solely of the testimony of Richard Marx, an attorney who has represented Al Kopolow in various business transactions including the transaction between Modern Textile Company and Modern Textile, Inc. Marx' testimony was as follows:

2. In their post-trial reply brief, the Plaintiffs argue that the Defendants admitted, in certain of their pleadings, that Al Kopolow Investment Company is the successor in interest to Modern Textile Company. In an amendment by interlineation to their Answer, Defendants Continental and P.M. stated:

8. The misrepresentations as set forth in Paragraph 5 above constitute a breach of the Purchase Agreement between Debtor and Modern Textile Company (now Al Kopolow *Investment Company)...* (emphasis added) This language in Defendants' Answer must be read in conjunction with the earlier language in Defendants' Answer (Paragraph 3—see footnote # 1, *supra.*) which denied knowledge of Al Kopolow Investment Company, but assumed *for purposes of the answer* and based on Plaintiffs' allegations, that Al Kopolow Investment Company and Modern Textile Company are the same business entity. This language does *not,* in my judgment, constitute an admission by Defendants that Al Kopolow Investment Company and Modern Textile Company are the same business entity.

In Paragraph # 3 of their Counterclaim, Defendants Continental and P.M. stated:

3. Plaintiffs Al Kopolow ("Kopolow") and Al Kopolow Investment Company are residents of the County of St. Louis, Missouri. *It is believed that Al Kopolow Investment Company was, during the pertinent time period set forth in this Counterclaim, known as "Modern Textile Company",* a Missouri corporation, and they will be hereafter referred to collectively as Modern Textile Company. (Emphasis added)

Although it would have been preferable if Continental and P.M. had repeated, in Paragraph # 3 of their Counterclaim, the language of limitation found in Paragraph # 3 of their Answer, I do not agree that this language, read together with Defendants' other pleadings, constitutes an admission by the Defendants that Al Kopolow Company and Modern Textile Company are the same business entity.

"Q. (By Plaintiffs' attorney) Is there a company presently known as Al Kopolow Investment Company?

A. Yes

Q. What is that?

A. That's Modern Textile Company with a change of name."

This bald statement does *not* persuade me that Al Kopolow Investment Company is the proper entity to establish a claim under the Clarksville sublease or the Fee Fee lease. Marx did not testify as to the circumstances surrounding the name change, nor did he testify why or when the name change occurred. Marx did not testify that he prepared or filed the documents necessary to effect a corporate name change under state law. I am not persuaded that Marx had any independent knowledge that Al Kopolow Investment Company is Modern Textile Company.

Much better evidence, in the form of documents of assignment or secretary of state records, could have been presented, if available, to establish Al Kopolow Investment Company's right to claim through Modern Textile Company. The fact that these documents were not presented as evidence causes me to doubt their very existence and thus the validity of Al Kopolow Investment Company's claims. Both leases are between Modern Textile Company and Modern Textile, Inc. Al Kopolow Investment Company has not proved that it is entitled to establish a claim under either lease. I find that Al Kopolow Investment Company is not the real party in interest.[3]

▮ The Defendants attack Al Kopolow Investment Company's right to relief in Count I of the Complaint on a second ground. The Defendants argue that Plaintiffs did not prove that Modern Textile Company had the right to sublease the Clarksville property to the Debtor, as Plaintiffs did not establish a valid assignment of the Clarksville lease (between the City of Clarksville and Kamp Togs, Inc.) from Kamp Togs, Inc. to Modern Textile Company.

To prove a valid assignment of the lease by Kamp Togs, Inc., to Modern Textile Company, the Plaintiffs sought to introduce a document titled "Assignment of Lease," which reads as follows:

The undersigned, KAMP TOGS, INC., hereby assigns, sells and sets over unto MODERN TEXTILE COMPANY that certain lease entered into as of the 1st day of January, 1983 by and between the CITY OF CLARKSVILLE, MISSOURI, as Lessor, and the undersigned as Lessee. Dated at St. Louis County, Missouri, this ____ day of June, 1977.

KAMP TOGS, INC.
By AL KOPOLOW

(Plaintiffs' Exhibit 12). The Defendants objected vigorously to the introduction of this exhibit on the grounds that the document should have been produced during pre-trial discovery in response to Defendants' Interrogatories Directed To Plaintiff (Interr. Number 13), filed August 24, 1981, and in response to Defendants' Request For Production of Documents Directed to Plaintiffs (Request Number 9), also filed August 24, 1981. In my judgment, the "Assignment of Lease" should have been produced in response to Defendants' Request For Production of Documents Directed to Plaintiffs (Request Number 9).[4]

---

3. Numerous objections were made by the Defendants at trial to Plaintiffs' evidence of damages incurred as the result of Debtor's breach of the leases. The evidence was taken subject to Defendants' objections, and Plaintiffs were cautioned that they would need to connect up the evidence of damage with Al Kopolow Investment Company's right to a judgment for those damages. Because I find that Al Kopolow Investment Company did not prove that it is the real party in interest, Defendant's objections are hereby sustained.

4. Defendants' Request For Production of Documents Directed to Plaintiffs, Number 9, requests:

All Documents relating or referring to your lease of all or a portion of the Clarksville premises, as lessee, from the City of Clarksville, Missouri, or any other owner or lessor of the Clarksville premises, including such lease and any modifications, amendments or extensions thereto.

Plaintiffs responded by producing one document, a copy of the lease between the City of

Plaintiffs attempt to excuse their failure to produce the lease assignment by arguing that the document was not in their possession, that the document was in the files of Plaintiff Al Kopolow's attorney, Richard Marx, and thus Plaintiffs were not required to produce it. This contention is completely without merit. The requirements under Fed.R.Civ.P. 34(a) for the production of documents are whether a document sought to be produced is within the scope of Fed.R.Civ.P. 26(b) (general rules governing the scope of discovery) and whether the document is in the possession, custody, or control of the party upon whom the request is served. The key word, here, is "control". "A party need not have actual possession of documents to be deemed in control of them." *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420, 422 (N.D.Ill.1977); *Bough v. Lee,* 29 F.Supp. 498, 501 (S.D.N.Y. 1939). "Production may be ordered when a party has the legal right to obtain papers, even though he has no copy, and regardless of whether a paper is beyond the jurisdiction of the court." *Buckley v. Vidal,* 50 F.R.D. 271, 274 (S.D.N.Y.1970), "Possession by an attorney or a third party of the document or matter required to be produced cannot be used as a means of avoiding compliance with a direction for its production." *Bifferato v. States Marine Corp. of Delaware,* 11 F.R.D. 44, 46 (S.D.N.Y.1951); *Commercial Credit Corp. v. Repper (In re Ruppert),* 309 F.2d 97 (6th Cir.1962); *Simper v. Trimble,* 9 F.R.D. 598 (W.D.Mo.1949). Otherwise, a party could easily evade his duty to produce simply by delivering the documents into the hands of his attorney. Plaintiff should have produced the document titled "Assignment of Lease" in response to the Defendants' Request For Production of Documents.

The Defendants contend that, because the Plaintiffs failed to produce the "Assignment of Lease" in compliance with the Federal Rules of Civil Procedure relating to pre-trial discovery, the document should not be admitted into evidence at trial in support of Plaintiffs' case in chief.

Clarksville and Kamp Togs, Inc. (Defendant's

Fed.R.Civ.P. 37 provides sanctions for a party's failure to make or cooperate in discovery. The rule, however, is not specifically applicable to the factual situation presented by this case. Fed.R.Civ.P. 37 addresses itself to a failure to comply with appropriate pre-trial discovery *and the discovery* of that failure to comply during pre-trial proceedings. The party seeking discovery may then apply for a court order compelling discovery [37(a)] or request other sanctions [37(b) and (d)] so that the discovery process may be completed and the issues for trial crystalized. The rule does not address itself to the problem presented when a party provides an incomplete response to a request for production but the incomplete nature of the response does not manifest itself until after trial has commenced. 37(d) is not applicable since it applies only in situations of total noncompliance with a request for production, an interrogatory, etc. *Laclede Gas Company v. G.W. Warnecke Corp.,* 604 F.2d 561 (8th Cir.1979). Nevertheless, similar problems, similar to the problem sub judice, raised by Defendant's contention, have been addressed by the federal courts, which have found that the spirit of the discovery rules of the Federal Rules of Civil Procedure requires the exclusion of evidence which should have been, but was not, furnished in pre-trial discovery. The Sixth Circuit addressed this problem in *Davis v. Marathon Oil Company,* 528 F.2d 395 (6th Cir.1975) *cert. denied,* 429 U.S. 823, 97 S.Ct. 75, 50 L.Ed.2d 85 (1976).

In *Davis,* Marathon served interrogatories requesting the names of all persons acquainted with the facts of the case. Davis answered these interrogatories. Then, three days before trial, Davis filed supplemental answers listing five new witnesses. The district court precluded the calling of these new witnesses at trial. The Sixth Circuit affirmed, stating:

> In the short time afforded, there was virtually no way for Marathon to prepare adequately to respond to the testimony of the surprise witnesses. Unfair surprise

P.M. Exhibit A).

of this sort is contrary to the policy of the federal rules, which sanction extensive discovery. If appellant had refused to answer the interrogatory in question, Marathon could have obtained an order requiring appellant to answer under Rule 37(a). Then, if appellant still refused to answer, or answered incompletely, Rule 37(b) provides that the court could issue "[a]n order . . . prohibiting . . . [the disobedient party] from introducing designated matters in evidence . . . ." Since Marathon did not know that the original answer was incomplete, it did not move for an order under Rule 37(b) to compel appellant to complete it. Even though Rule 37(b) is not directly applicable, we hold that the trial judge properly exercised discretion in regard to the surprise witnesses, and that any other decision would be contrary to the policy of Rule 37. 528 F.2d at 404.

In *Newsum v. Pennsylvania Ry. Co.,* 97 F.Supp. 500 (S.D.N.Y.1951), the Plaintiff propounded interrogatories requesting the names of persons who had knowledge of the case. The Defendant responded with the names of a number of persons but failed to furnish the names of two persons later called as witnesses at trial. The district court refused to allow these two witnesses to testify reasoning that "to allow the Defendant to withhold the names of important witnesses and to later call them at the trial was taking advantage of the Plaintiff and a violation of the rules of civil procedure and of the proper interpretation of same." 97 F.Supp. at 502.

The Eighth Circuit has affirmed the district court use of the exclusionary remedy under Fed.R.Civ.P. 37(b)(2)(B) when parties have attempted to introduce evidence at trial not disclosed prior to trial and in violation of a pre-trial order. *Iowa-Mo Enterprises, Inc., v. Avren,* 639 F.2d 443 (8th Cir.1981); *Admiral Theatres Corp. v. Douglas Theatre Co.,* 585 F.2d 877 (8th Cir.1978).

The foregoing cases persuade me that the Plaintiffs in the case *sub judice* should not be allowed to introduce into evidence a document that should have been produced for the Defendants' inspection prior to trial in compliance with Fed.R.Civ.P. 34. The exercise of reasonable diligence by the Plaintiffs in responding to Defendants' request for production of documents should have produced the "Assignment of Lease."

The remaining evidence relating to the corporate relationship between Kamp Togs, Inc. and Modern Textile Company was conflicting. From this evidence it is impossible to conclude that Modern Textile Company had a valid right to sublease property leased to Kamp Togs, Inc. Al Kopolow testified that he founded both corporations, that Modern Textile Company was a wholesaler of children's clothing, and that it purchased "piece goods" from Kamp Togs, Inc. Kopolow testified that he thought Kamp Togs, Inc., and Modern Textile Company had "merged" but did not use the word as a legal term of art. He stated that he left this type of company organization to his lawyers.

Richard Marx, Kopolow's attorney, testified that the assets of both Kamp Togs, Inc. and Modern Textile Company (and Altamount Garment Co. and possibly Pressnot Corp.) were sold to the Debtor, in 1977 as part of the Purchase Agreement between the Debtor and Modern Textile Company. When asked what happened to these various corporate entities after the sale of assets took place, Marx testified over Defendants' objections, "Well, they no longer exist except for Modern Textile Company. My memory is they were merged, but they may have just been liquidated into their parent." No documentary evidence was supplied to support either of Marx' suppositions. The Defendants presented a copy of records kept by the corporate division of the Secretary of State reflecting that the corporation, Kamp Togs, Inc., was officially dissolved on December 5, 1977. This information does not fill the gap between the lease to Kamp Togs, Inc., and the sublease by Modern Textile Company to Modern Textile, Inc. Again, I am not persuaded that Plaintiff Al Kopolow Investment Company possesses the substantive right it is attempting to enforce by this Complaint.

### Count III

In Count III of the Complaint, Plaintiff Al Kopolow alleges a breach of an Employment Agreement (Plaintiffs' Exhibit 1D) between himself and the Debtor. Plaintiff alleges that the Debtor has failed and refused to pay to him the compensation due under the Agreement since July 1, 1980. Under the Assurances Agreement, Defendants Continental and P.M. guaranteed Debtor's performance under the Employment Agreement. Plaintiff prays for judgment against all three Defendants.

■ The Employment Agreement was entered into as of July 1, 1977. Al Kopolow agreed to render consulting services to the Debtor over an eight-year period, in exchange for an agreed upon compensation to be paid monthly and decreasing in amount over the life of the agreement.[5] Kopolow testified that he received no payments under the Employment Agreement during 1981 although he stood ready, willing, and able to perform under the agreement. The Defendants presented no evidence to rebut his testimony. Indeed, Defendants did not even cross-examine Kopolow regarding his performance under the agreement.

Compensation payable to Al Kopolow is $16,000 a year for the year ending June 30, 1980, and for each year thereafter, for the life of the contract (payable monthly). 11 U.S.C. 502(b)(8) restricts, however, the amount of the claim, against this bankruptcy estate, which may be asserted by Mr. Kopolow, to the compensation due him when the petition was filed (October 31, 1980), plus compensation under the contract for one year thereafter. Kopolow is entitled to interest upon the monthly payments accrued under the contract to the time of the filing of the bankruptcy petition ($100).

Accordingly, Mr. Kopolow is entitled to a judgment, against the Defendant Trustee in and for the sum of $21,433.33, the judgment to be satisfied, only, by distribution by the Defendant Trustee out of the trust funds in this trust account in this case: the judg-ment is to be considered, merely, as a general, unsecured claim against this estate, to be paid in accordance with the distributive provisions of the Bankruptcy Code.

In respect of the remaining Defendants, Mr. Kopolow is not restricted in this recovery by 11 U.S.C. § 502(b)(8), in my judgment. As to them, he is entitled to judgment for the total of amount due under the contract from July 1, 1980, to July 1, 1981, the date of the filing of this Complaint, plus interest upon the monthly installments, plus the present value (as of July 1, 1981), with interest, of the sums due under the contract during the remainder of its life. *Puller v. Royal Casualty Co.,* 271 Mo. 369, 196 S.W. 755 (1917). In that respect, Mr. Kopolow did not adduce evidence concerning that present value.

Utilizing the Missouri statutory rate of interest (9%) in effect when the Complaint was filed, the present value of the compensation on that date is $53,940. Accrued compensation, including interest, to July 1, 1981, is $16,780. Accordingly, Mr. Kopolow is entitled to judgment against the remaining Defendants, in and for the sum of $70,-720, to bear interest at 9% per year upon the sum of $69,940.00 from and after July 1, 1981 until paid.

### Counterclaims

The evidence presented by Defendant upon their counterclaims is not, in my judgment, sufficient to sustain any recovery; and, accordingly, judgment upon the Counterclaims of the Defendants should be entered in favor of the Plaintiffs.

.　　.　　.　　.　　.

This cause was tried, on January 13, 1982, at a time when it was thought that this Bankruptcy Court had jurisdiction to enter a judgment upon the Complaint, as amended, and upon the Counterclaims. Since, the Supreme Court, in *Marathon,* has told us to the contrary insofar as this cause presents issues between the Plaintiffs and non-bank-

---

**5.** Paragraph 3 of the Employment Agreement states that the term of Kopolow's employment shall be seven years. However, employment was to begin July 1, 1977, and continue until June 30, 1985, which is an eight year period.

ruptcy Defendants. Although I believe a binding judgment of the issues between the Plaintiffs and the Defendant Trustee could be entered by this Court, those issues are interwined with those issues this Court cannot constitutionally adjudicate. Moreover, piecemeal judgments are not to be entered.

Accordingly, pursuant to the provisions of paragraph (d)(3)(B) of the Rules For The Administration Of The Bankruptcy System, promulgated by the United States District Court for this District on December 20, 1982, effective December 25, 1982, this cause is being transmitted to this Court for its review. This Memorandum Opinion is being transmitted as this Court's proposed findings of fact and conclusions of law, in accordance with the provisions of (d)(3)(B) of said Rule. A proposed judgment will also accompany the transmittal of the cause, in accordance with the provisions of said paragraph.