82 B.R. 144 (1988)
In re THE CHARTER COMPANY, et al., Debtors.
Bankruptcy Nos. 84-289-BK-J-GP to 84-332-BK-J-GP and 85-1033-BK-J-GP.
United States Bankruptcy Court, M.D. Florida, Jacksonville Division.
January 14, 1988.
*145 Parker B. Smith, Atlantic Beach, Fla., for Abourezk.
Karen S. Jennemann, Jacksonville, Fla., for Charter.
FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CLAIM NO. 1 CASE NO. 84-289-BK-J-GP FILED BY JAMES G. ABOUREZK
GEORGE L. PROCTOR, Bankruptcy Judge.
Claimant, James G. Abourezk, filed a proof of claim in the amount of $210,000 in the Chapter 11 case of The Charter Company ("TCC"). TCC objected to this claim on the ground that the claim amount was limited to $56,383.32 pursuant to 11 U.S.C. § 502(b)(7).
At the trial, the parties stipulated that the depositions filed were deemed part of the trial record, and the Court heard the testimony of claimant and Richard H. Holtz. The Court accepted certain portions of this testimony pending the resolution of TCC's objection to the admission of parol evidence. The Court, having considered the evidence and the argument of counsel, makes the following findings of fact and conclusions of law.

Findings of Fact
1. Claimant filed proof of claim, number 1, in the amount of $210,000 in the Chapter 11 case of TCC, Case No. 84-289-BK-J-GP (the "Claim").
2. The Claim is based upon a consulting agreement between claimant and TCC dated July 1, 1981 (the "Consulting Agreement"), a copy of which is attached as Exhibit A.
3. TCC filed an objection to the Claim on the ground that the claim amount was limited to $56,383.32 pursuant to 11 U.S.C. § 502(b)(7).
4. The Consulting Agreement required claimant (i) to be available to provide consulting services to TCC, upon request, regarding transactions with the governments of Middle Eastern nations or involving the petroleum business in the Middle East, and (ii) to refrain from providing such services to any party with an adverse interest to TCC.
5. Under the Consulting Agreement, TCC was required to pay claimant $150,000 for the first year and $70,000 per year for five years thereafter beginning July 1, 1982. Although TCC paid for the services through June 30, 1984, TCC did not make the payments due on July 1, 1984, and thereafter.
6. In accordance with his obligations under the Consulting Agreement, claimant did refrain from representing any interest adverse to TCC and held himself in readiness to perform services for TCC under the Consulting Agreement.
7. The Court finds that the terms of the Consulting Agreement are unambiguous and that no material term was omitted from the Consulting Agreement by the parties. Further, the Court finds that the claimant, an experienced attorney, read and understood the terms of the Consulting Agreement at the time of its execution.
8. TCC filed its petition for reorganization with this Court on April 20, 1984 (the "Petition Date").
9. The services under the Consulting Agreement were terminated on August 3, 1984, when this Court entered an order *146 approving the rejection of the Consulting Agreement.
10. Because claimant was paid under the Consulting Agreement through June 30, 1984, the net amount due under the Consulting Agreement for one year following the Petition Date was $56,383.32.

Conclusions of Law
1. The legal issues in this contested matter are governed by the applicable provisions of the Bankruptcy Code and the laws of the State of New York.
2. Title 11, U.S.C., § 502(b)(7) limits recovery on claims for damages arising from the termination of employment contracts to one year's compensation, without acceleration, from the earlier of the date of the petition or the date services under the employment contract were terminated.[1]
3. An agreement is an "employment contract," within the purview of 11 U.S.C. § 502(b)(7), if it establishes the terms and conditions of an employment relationship. In re N & T Associates, Inc., 78 B.R. 285 (Bankr.D.Nev.1987); In re Aero-Auto Company, Inc., 33 B.R. 107 (Bankr.E.D.Va.1983); See also, In re Gee & Missler Services, Inc., 62 B.R. 841, 843-44 (Bankr.E.D.Mich.1986). No actual services need be performed under such an agreement to qualify as an employment contract. In re Modern Textile, Inc., 28 B.R. 181 (Bankr.E.D.Mo.1983).
4. The Consulting Agreement in this case is an "employment contract" under 11 U.S.C. § 502(b)(7) because it establishes an employment relationship between TCC and claimant. Specifically, the Consulting Agreement has the essential attributes of an employment contract in that (i) the title of the agreement, "Consulting Agreement and Retainer," delineates an employment relationship, (ii) under the agreement TCC retained claimant's personal services to act as a consultant in matters involving Middle Eastern business and political affairs, (iii) the agreement precluded him from providing services during the term of the agreement to any other party adverse to TCC in a litigation context, (iv) the Consulting Agreement was not assignable by either party, and (v) the employment relationship was terminated upon TCC's rejection of the Consulting Agreement.
5. Claimant argues that the Consulting Agreement is not an employment contract because it is not definite as to the amount of additional compensation claimant was to receive in the event his services were used by TCC. However, the terms of the Consulting Agreement plainly state that, to earn his annual $70,000 payments, he was required to be available to perform services for TCC and to refrain from providing such services to any party with an adverse interest to TCC. Merely because the parties agreed to negotiate claimant's fee for additional services if requested by TCC, does not alter the fact that the Consulting Agreement created an employment relationship between TCC and claimant.
6. At trial, claimant introduced parol evidence, subject to TCC's objection, in an attempt to show that, contrary to the plain terms of the Consulting Agreement, TCC never really intended to use his services and that the Consulting Agreement was merely intended by the parties to be, in effect, a promissory note from TCC.
7. Under New York law, the parol evidence rule provides that the clear and unambiguous terms of a written instrument cannot be contradicted or varied by prior or contemporaneous extrinsic oral or written evidence. Happy Dack Trading Co., Ltd., v. Agro Industries, Inc., 602 F.Supp. 986, 991 (S.D.N.Y.1984); Barclays Bank of New York v. Goldman, 517 F.Supp. 403, 411 (S.D.N.Y.1981) and the cases cited therein; In re Rosner, 48 B.R. 538, 555-56 (Bankr.E.D.N.Y.1985); Higgs v. deMaziroff, 189 N.E. 555, 263 N.Y. 473 (1934); See also, In re Aero-Auto Company, supra at 108. An agreement which appears complete on its face is integrated as a matter of law regardless of the presence of a *147 formal merger clause. Happy Dack, supra; Battery Steamship Corp. v. Refineria Panama, S.A., 513 F.2d 735, 738 n. 3 (2nd Cir.1975).
8. For the reasons stated above, the Court finds that the terms of the Consulting Agreement are unambiguous and that no material term was omitted from the Consulting Agreement. Accordingly, because claimant failed to demonstrate any sufficient basis to permit the introduction of parol evidence, the Court sustains the objection of TCC and will disregard the parol evidence proffered by claimant at the trial.
9. This conclusion is not determinative, however, for even if parol evidence were allowed to vary the terms of an unambiguous written agreement, the evidence presented at the hearing was insufficient to lead to the conclusion that the Consulting Agreement was anything but an employment contract. Even if claimant had entered into the Consulting Agreement in connection with the settlement of litigation involving TCC, he plainly agreed (i) to make his services available to TCC in connection with Middle Eastern business and political affairs, and (ii) to refrain from rendering services, in a litigation context, to any party adverse to TCC. Thus, even if TCC was not inclined to use claimant's services at the time the Consulting Agreement was signed, it nevertheless negotiated and obtained (i) the right to use his personal services for the term of the Consulting Agreement, and (ii) the right to preclude claimant from providing such services to any party in litigation against TCC.
10. Moreover, the Court finds testimony of claimant regarding the intent of the parties to be unpersuasive. Specifically, claimant, as an experienced attorney, was aware that other types of legal documents, such as a promissory note, would have made TCC's payment obligations unconditional. However, his attorneys prepared and reviewed the Consulting Agreement with him before he signed it, and, as he admitted at trial, claimant read and understood the terms and conditions of the Consulting Agreement at the time he signed it. Indeed, in a letter to TCC over two years later, claimant described the Consulting Agreement as "an agreement . . . to retain me as a consultant over a period of five years."
11. For these reasons, the amount to be allowed for a claim arising from the termination of the Consulting Agreement is limited to one year's compensation from the Petition Date pursuant to 11 U.S.C. § 502(b)(7). This Claim will be allowed in the amount of $56,383.32, which represents one year's compensation due under the Consulting Agreement from the Petition Date.
12. A final order will be entered in accordance with these Findings of Fact and Conclusions of Law.

*148 EXHIBIT A

*149 
*150 
NOTES
[1] The version of § 502(b)(7) considered by the Court was the version applicable on the Petition Date.