In re UNIT POWER, INC., Debtor.

UNIT POWER, INC. and The Official Unsecured Creditors' Committee of Unit Power, Inc., Plaintiffs,

v.

Donald E. DWYER and William R. Boxdorfer, Defendants.

Bankruptcy No. 96–49048–293.
Adversary No. 97–4045.

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

July 22, 1997.

Craig A. Smith, Suelthaus and Walsh, St. Louis, MO, for Unit Power, Inc.

Bonnie Clair, Office of U.S. Trustee, St. Louis, MO.

Peter D. Kerth, Gallop, Johnson & Neuman, Clayton, MO.

Mike Young, Edwards, Singer, Wolk & Spoeneman, Clayton, MO.

Francis X. Buckley, Jr., Thompson Coburn, St. Louis, MO.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District

Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(B), which the Court may hear and determine.

## PROCEDURAL BACKGROUND

1. Debtor, Unit Power, Inc. (Unit Power) filed a Petition for Subordination and for Determination of Treatment of Claims on February 24, 1997. Unit Power asked the Court, *inter alia*, to apply section 502(b)(7) of the Code to the claims, if any, of Donald E. Dwyer and William R. Boxdorfer (claimants) and limit those claims to an amount "believed not to exceed $117,610.00 per [claimant]."

2. The Court granted the Official Unsecured Creditors' Committee's (Creditors' Committee) Motion to Intervene in this adversary and on May 29, 1997, the Creditors' Committee filed a Motion for Partial Summary Judgment On Limitation of Claims of Defendants.

3. The parties briefed the issue of whether section 502(b)(7) applies to cap Dwyer and Boxdorfer's claims.

## FACTUAL BACKGROUND

Claimants, Dwyer and Boxdorfer, state in their brief that they "do not dispute those facts set out by the [Creditors'] Committee in its memorandum in support of its summary judgment motion." Those facts may be summarized as follows:

1. William R. Boxdorfer and Donald E. Dwyer were majority shareholders, directors and officers of the Debtor, Unit Power, Inc., until 1993 when they sold the company to Tokyo Iron Works, a Japanese national company.

2. On March 31, 1993, Boxdorfer and Dwyer executed employment contracts, entitled Employment Agreements, in which they agreed to provide services to the Debtor. On that same day each claimant executed a document entitled Stock Purchase Agreement by which he sold his shares in Unit Power to Tokyo Iron Works.

3. The Employment Agreements the Debtor executed with Boxdorfer and Dwyer were substantially similar to one another. The only significant difference being that Boxdorfer's Employment Agreement purported to employ him as "to an executive general manager position" and Dwyer's Employment Agreement purported to hire him "to an executive or sales manager." Each Employment Agreement specified it was to be effective March 31, 1993 through July 31, 1998 and provided that the employee-party to it would receive a yearly salary of $75,000.00 plus incentive pay equal to ten percent of the Debtor's net income, provided that the total not exceed the sum of the prior years' total and $25,000.00. The Employment Agreements also provided that Dwyer and Boxdorfer's salaries would be "subject to the usual payroll deductions in accordance with the general practices of the [Debtor]." Further, the Employment Agreements contained provisions governing vacation leave and fringe benefits. The third numbered section of each agreement barred Dwyer and Boxdorfer from "engaging in any business activities similar to those of [Debtor] with or for any other person or entity to any extent other than the extent required by the terms and conditions of this Agreement." The Agreements do not contemplate the deaths of Dwyer and Boxdorfer but provide that either's employment will terminate if he is disabled for more than 180 days in any twelve (12) month period and he is paid severance pay equal to his current base salary for one year. Finally, each agreement provided that Dwyer and Boxdorfer could be terminated either upon becoming disabled as defined in the Employment Agreements or "for cause" after being given written notice and an opportunity to cure.

4. On July 16, 1993, the Debtor notified Boxdorfer and Dwyer that their Employment Agreements were terminated effective July 26, 1993. The termination date was later extended to August 23, 1993 by a letter agreement.

5. On October 15, 1993, Boxdorfer and Dwyer commenced an action in the Circuit Court of St. Louis County, Missouri against the Debtor seeking damages for the alleged

breach of their Employment Agreements. The Debtor filed a counterclaim.

6. On August 13, 1996, Circuit Judge Robert G.J. Hoester awarded Boxdorfer and Dwyer a total of $1,599,792.10 in damages for the Debtor's alleged breach of the Employment Agreements. Judge Hoester also entered judgment for Debtor on its counterclaim. All parties have appealed Judge Hoester's decision and the case is currently pending in the Missouri Court of Appeals, Eastern District.

7. On October 28, 1996, the Debtor filed its Petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor's schedules indicate that Boxdorfer and Dwyer each hold contingent, disputed claims in the amount of $650,000.00 representing the alleged damages arising from the breach of their Employment Agreements.

Additionally, the Court notes that Boxdorfer and Dwyer have filed affidavits in which each swears that he considered his execution of the Employment Agreement to be an integrated part of the sale of his shares to Tokyo Iron Works and that absent the execution of the Employment Agreement he would not have sold his shares for the cash price Tokyo Iron Works paid. Each also attested that he considered the Employment Agreement to be consideration for the sale of his stock and that he opted to accept a form of deferred payment, namely salary, because it allowed him to spread out the payment and pay income tax as opposed to capital gain tax. Lastly, each claimant attested that the Employment Agreements' failure to detail the claimant's job duties and alleged continuation of the agreement should the claimant become disabled evidence the fact that the Agreement "was not purely an employment agreement."

## DISCUSSION

The issue before the Court is whether section 502(b)(7) of the Bankruptcy Code should be applied to limit the claims of Boxdorfer and Dwyer. The Court does not today decide whether to allow Dwyer and Boxdorfer's claims.

Section 502(b)(7) provides:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—

\* \* \*

(7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

(A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

(i) the date of the filing of the petition; or

(ii) the date of on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract without acceleration, on the earlier of such dates.

The Creditors' Committee argues that section 502(b)(7) applies to Dwyer and Boxdorfer's claims because they "represent compensatory damages arising from the breach of their five year Employment Agreements." The Creditor's Committee presumes that the Employment Agreements are "employment contracts" as that term is used in section 502(b)(7).

The Debtor, in a memorandum filed in support of the Creditors' Committee's motion, refutes the argument that the Employment Agreements Dwyer and Boxdorfer executed were part of the consideration for which they exchanged their Unit Power stock. The Debtor points out that the claimants sold their stock in Unit Power to Tokyo Iron Works under Stock Purchase Agreements that were separate from the Employment Agreements on which they sued in the state court and that the Stock Purchase Agreements do not reference the Employment Agreements. Finally, the Debtor emphasizes that the state court judgment upon which Dwyer and Boxdorfer base their

claims was limited to the third count of their state court complaint which sounded in breach of contract.

In response, Dwyer and Boxdorfer argue that the Employment Agreements they executed were not simple employment agreements but, rather, a means by which they received payment for the Unit Power stock that they sold. Dwyer and Boxdorfer further assert that the determination of what role the Employment Agreements served is a factual question that precludes summary judgment.

 Claimants ask the Court to look beyond the label applied to the Employment Agreements they executed to determine whether they are, in fact, consideration for stock sold and not only employment contracts. Unfortunately for claimants, this requires the Court to consider parole evidence. Under Missouri law[1] the parole evidence rule bars the admission of extrinsic evidence unless a contract is ambiguous. *Silver Dollar City, Inc. v. Kitsmiller Construction Co., Inc.*, 931 S.W.2d 909, 914 (Mo.Ct.App.1996) (citing *Headrick Outdoor, Inc., v. Middendorf*, 907 S.W.2d 297, 300 (Mo.Ct.App.1995)). Dwyer and Boxdorfer have not identified an ambiguity in their Employment Agreements that parole evidence would clarify or explain and so the Court must conclude that the Employment Agreements were intended to be only contracts of employment to which section 502(b)(7) applies. *See In re Aero-Auto Co., Inc.*, 33 B.R. 107, 108 (Bankr.E.D.Va.1983) (parole evidence not admissible to demonstrate that employment contract executed contemporaneously with stock purchase agreement was additional consideration for sale of stock); *cf. In re The Charter Co.*, 82 B.R. 144, 145 (Bankr.M.D.Fla.1988) (parole evidence not admissible to demonstrate that employment contract was intended to be promissory note when no ambiguity appeared on contract's face).

Even if the Court were to consider Dwyer and Boxdorfers' affidavit evidence, it would reach the same conclusion. On the one hand, Dwyer and Boxdorfer assert that the Employment Agreements were intended to compensate them, in part, for the stock they transferred to Tokyo Iron Works. In considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party, here, Dwyer and Boxdorfer. *Osburn v. Morrison Knudsen Corp.*, 962 F.Supp. 1206 (E.D.Mo.1996) Therefore, the Court will consider the fact that the Employment Agreements were executed on the same day as the Stock Purchase Agreements as support for claimants' position that the transfer of their stock and execution of the Employment Agreements were parts of an integrated transaction. Claimant's assertions and the circumstances of the Employment Agreements' execution would not, however, end the inquiry into whether the Employment Agreements were employment contracts as that term is used in section 502(b)(7).

Courts have measured contracts against a number of factors to determine whether a contract is an employment contract to which section 502(b)(7) applies. *See In re Bergh*, 141 B.R. 409, 416 (Bankr.D.Minn.1992) (citing *In re Johnson*, 117 B.R. 461 (Bankr. Minn.1990); *In re The Charter Co.*, 82 B.R. 144 (Bankr.M.D.Fla.1988); and *In re Aero-Auto Co.*, 33 B.R. 107 (Bankr.E.D.Va.1983)). Among the factors courts have found to evidence an employment contract include: "a written agreement; how the agreement is entitled; if the agreement identifies job responsibilities; if the agreement provides the terms for compensation and benefits; if withholding taxes and social security are deducted from compensation; if the 'employee' is precluded from certain other activities; if the agreement is not assignable; if the agreement ceases when a party dies; and provisions for terminating the agreement." *Id.*

 The Employment Agreements Dwyer and Boxdorfer executed contain many of the indicia of employment contracts including: their title; their provisions governing the compensation and benefits; their terms concerning the deduction of payroll deductions from the compensation awarded to claimants; their terms precluding claimants from performing similar business activities for other entities; and their terms providing for their

---

1. The Employment Agreements state that they are to "be construed in accordance with the laws of the State of Missouri."

termination. The claimants assert in their affidavits that the lack of a detailed description of the duties that they were to perform is evidence that the agreements were not true employment contracts. While it is true that the Employment Agreements do not describe Dwyer and Boxdorfer's duties point by point, they do affix a title to each claimant and state that the employer may assign to the employee additional or different duties, of the nature customarily assigned to an executive or person possessing the same title. Similarly, the Employment Agreements do not specifically contemplate the death of either employee but their termination provisions would effect a termination if the employee-party were to die. After analyzing the Employment Agreements under the factor test set out in *In re Bergh* and considering the affidavit evidence and argument presented by the claimants, the Court finds that no material issue of fact remains and that the Employment Agreements are employment contracts as that term is used in section 502(b)(7) of the Bankruptcy Code.